**IN RE L.G.I.**

[227 N.C. App. 512 (2013)]

IN THE MATTER OF L.G.I.

No. COA12-1369

Filed 4 June 2013

1. **Child Abuse, Dependency, and Neglect—court's recitation of facts—mother's agreemen—stipulation**

    The trial court complied with N.C.G.S. § 7B-807 in entering an adjudication order in a child neglect proceeding where the child suffered prenatal exposure to opiates and other drugs, the trial court read the facts into the record, and respondent mother then agreed to the facts under oath. The record did not reflect that respondent's stipulation was contingent upon any reciprocal agreement with the Department of Social Services and there was evidence in the record as to the child's prenatal drug exposure, even without respondent-mother's stipulation.

2. **Child Abuse, Dependency, and Neglect—dispositional order—cessation of reunification efforts—not a permanent plan of adoption**

    In a child neglect proceeding, there was no merit to the mother's argument that a permanent plan of adoption was improperly ordered where the trial court said in open court that the permanent plan would be adoption, but in its written dispositional order only relieved DSS of reunification efforts and set a permanency planning hearing for a later date. The court allowed respondents to continue to work toward reunification on their own.

3. **Child Abuse, Dependency, and Neglect—cessation of reunification—supported by record**

    A mother's arguments concerning cessation of reunification efforts in a child neglect proceeding were not supported by the record where the trial court specifically encouraged respondents to do what was necessary to allow reunification to occur and even ordered visitation with the child.

4. **Child Visitation—neglected child—visitation plan—insufficiently detailed**

    A child neglect proceeding was remanded for clarification of respondent's visitation rights where the original plan was insufficiently detailed.

**IN RE L.G.I.**

[227 N.C. App. 512 (2013)]

Appeal by respondents from orders entered 15 August 2012 by Judge Sherry Dew Tyler in District Court, Brunswick County. Heard in the Court of Appeals 13 May 2013.

*Jess, Isenberg & Thompson, by Elva L. Jess, for petitioner-appellee Brunswick County Department of Social Services.*

*Jeffrey L. Miller, for respondent-mother-appellant.*

*Rebekah W. Davis, for respondent-father-appellant.*

*Poyner Spruill LLP, by Danielle Barbour Wilson, for guardian ad litem.*

STROUD, Judge.

Respondents appeal from an order adjudicating their daughter to be neglected and a dispositional order relieving the Department of Social Services from reunification efforts. For the following reasons, we affirm and remand for the trial court to provide a visitation schedule.

## I. Background

On 18 June 2012, the Brunswick County Department of Social Services ("DSS") filed a petition alleging that Lisa[1] was a neglected and dependent juvenile. Without objection the trial court admitted the medical records of Lisa and respondent-mother. During the adjudication portion of the hearing, respondent-mother was sworn in to testify and the trial court asked her,

> All right. Ms. [Smith], you've heard the allegations and the position of the Department with regard to an adjudication of neglect and the acknowledgments that Ms. Jess indicate[d] that you would make with regard to the "positive morphine at birth and the mother used illegal drugs during the pregnancy." Do you acknowledge that adjudication of neglect based upon the factors as set forth by Ms. Jess?

Respondent-mother testified, "Yes, ma'am." Respondent-father's attorney also stated that respondent-father was "not opposed to admission by" respondent-mother.

---

1. Pseudonyms will be used to protect the identity of the minor involved.

The trial court then moved into the dispositional phase of the hearing wherein a Court Summary prepared by DSS for the hearing was introduced which stated that Lisa had an opiate addiction due to her "prenatal exposure to opiates, Xanex [sic] and marijuana." The Court Summary further stated that Lisa was "on a feeding tube and ha[d] an irregular heartbeat" and "received morphine to assist in her withdrawal symptoms." The Court Summary also provided that

> [a] case plan has NOT been executed by . . . [respondents]. This social worker has not had an opportunity to explain the terms of the plan and to provide information to assist the parents in securing the recommended services. A Child and Family Team Meeting is being scheduled.

But the report also noted that respondents "have a pervasive and extensive history of involvement with the Brunswick County Department of Social Services and Criminal Justice Agencies" as well as with the Mecklenburg County Department of Social Services; this history included prior adjudications of two other children of respondents for neglect and dependency based upon prenatal drug exposure. In both of the prior cases involving respondents' children, respondents failed to consistently participate in their family services plans. Respondents eventually relinquished one child and it was not recommended that the other child return to respondents' care.

Despite the Court Summary, counsel for the parties apparently discussed resolution of the matter prior to the hearing and DSS's counsel agreed that all parties would continue to work toward reunification:

> MS. JESS [DSS's Attorney]: Through the adjudication process, we agreed that, at disposition, there would be a family services case plan, and we would initially work toward reunification.
>
> . . . .
>
> THE COURT: That's not what the order is going to say. I'm not going to order reunification. The plan is going to be adoption.
>
> MS. HANKINS [Respondent-father's Attorney]: Well, can we strike what we've done, Your Honor? Your Honor, that was contingent upon—
>
> THE COURT: No, ma'am, because, ultimately, the decision is not the Department's, the decision is mine.

IN RE L.G.I.

[227 N.C. App. 512 (2013)]

On 15 August 2012, the trial court entered written orders adjudicating Lisa neglected, relieving DSS from reunification efforts, and setting a permanency planning hearing for a later date. Respondents appeal.

## II. Adjudication Order

[1] While both respondent-mother and respondent-father make various arguments challenging the adjudication order, all of the arguments hinge on their contention that the trial court entered or failed to properly enter a "consent order." However, the trial court did not enter a consent order. *See generally In re Thrift*, 137 N.C. App. 559, 562, 528 S.E.2d 394, 396 (2000) ("A judgment by consent is the agreement of the parties, their decree, entered upon the record with the sanction of the court[.]" (citation, quotation marks, and brackets omitted)). Accordingly, all arguments regarding "consent" are without merit. ·

At most, respondent-mother entered into a stipulation as to certain facts during the adjudication phase of the hearing. North Carolina General Statute § 7B-807 provides:

> (a)   If the court finds from the evidence, *including stipulations by a party,* that the allegations in the petition have been proven by clear and convincing evidence, the court shall so state. *A record of specific stipulated adjudicatory facts shall be made* by either reducing the facts to a writing, signed by each party stipulating to them and submitted to the court; *or by reading the facts into the record, followed by an oral statement of agreement from each party stipulating to them. . . .*
>
> . . . .
>
> (b)   The adjudicatory order shall be in writing and shall contain appropriate findings of fact and conclusions of law.

N.C. Gen. Stat. § 7B-807 (2011) (emphasis added).

Here, the trial court "read[] the facts into the record" noting that Lisa tested positive for morphine at birth and respondent-mother had used illegal substances during her pregnancy. *Id.* Respondent-mother then agreed to the facts under oath. The record does not reflect that respondent-mother's stipulation was contingent upon any reciprocal agreement with DSS that reunification efforts would continue. Even assuming DSS had informed respondents that it would continue to work

toward reunification, there was evidence in the record as to Lisa's prenatal drug exposure, even without respondent-mother's stipulation.

The trial court moved on to the dispositional phase of the hearing, but throughout the proceedings respondent-mother never attempted to withdraw or change her testimony nor did either party attempt to challenge the medical records or Court Summary admitted into evidence. The record supports the trial court's finding of fact as to Lisa testing "positive for morphine at birth[,]" and respondents do not claim otherwise. Thereafter, the trial court entered a written order of adjudication based on Lisa's positive morphine test and respondent-mother's use of illegal drugs while pregnant. Accordingly, the trial court complied with North Carolina General Statute § 7B-807 in entering its adjudication order. *See id.*

### III. Dispositional Order

**[2]** Respondent-mother next challenges the dispositional order.

#### A. Permanent Plan for Adoption

Respondent-mother contends that the trial court erred in making the permanent plan for Lisa adoption. While the trial court did say in open court that the permanent plan would be adoption, in its written dispositional order the trial court actually only relieved DSS of reunification efforts and set a permanency planning hearing for a later date. Although the trial court did note that currently "the best plan to secure a safe, stable home for the juvenile within a reasonable period of time is adoption[,]" the trial court also specifically ordered that "[t]he parents have an opportunity, without reunification efforts on the part of the Department, to work their case plan, remain drug free, comply with the terms and conditions of the Family Services Case Plan and demonstrate their ability, desire and commitment to provide proper care for their daughter." Thus, the trial court did not set any permanent plan and allowed respondents to continue to work toward reunification on their own, leaving the door open for them to improve their abilities to care for Lisa and to demonstrate this to the trial court at a future hearing. For this reason, respondent-mother's argument that a permanent plan of adoption was improperly ordered is without merit.

#### B. Cessation of Reunification Efforts

**[3]** Respondent-mother also challenges the trial court's cessation of reunification efforts on the part of DSS as unsupported by the evidence and the findings of fact. But respondent-mother's numerous contentions

again all hinge on her argument that the trial court had ordered a permanent plan of adoption, not only ceasing reunification efforts on the part of DSS but also terminating any opportunity for her to attempt reunification. Again, the trial court specifically encouraged respondents to do what was necessary to allow reunification to occur and even ordered visitation with Lisa; accordingly, respondent-mother's arguments are not supported by the record and are without merit.

## IV. Visitation Schedule

[4] Lastly, respondent-mother contends the trial court erred when it ordered that "[a]ny visitation between the child and her parents shall be supervised by the Department and in its discretion." Respondent-mother argues that the trial court is required to provide a more detailed schedule for DSS and respondents to follow.

> Any dispositional order under which a juvenile is removed from the custody of a parent, guardian, custodian, or caretaker shall provide for appropriate visitation as may be in the best interests of the juvenile and consistent with the juvenile's health and safety. This Court reviews the trial court's decision whether it is in the best interests of the juvenile to award visitation to a parent for an abuse of discretion. If the court does award visitation to a parent, the order must include an appropriate visitation plan that sets out at least a minimum outline, such as the time, place, and conditions under which visitation may be exercised.

*In re W.V.*, 204 N.C. App. 290, 294, 693 S.E.2d 383, 387 (2010) (citations, quotation marks, and ellipses omitted). As the trial court here failed to "include an appropriate visitation plan that sets out at least the minimum outline, such as the time, place, and conditions under which visitation may be exercised[,]" we must "remand for proceedings to clarify respondent's visitation rights, including the establishment of a minimum outline of visitation." *Id.* at 295, 693 S.E.2d at 387. We note that details regarding visitation are particularly important in this case, as DSS is no longer required to assist respondents in their reunification efforts. Any lack of cooperation or communication between respondents and DSS as to visitation could irrevocably prevent respondents from having any opportunity to develop a relationship with Lisa, who was only one month old at the time of the hearing. Respondents should be given a realistic opportunity to develop their parental relationship; whether they take advantage of the opportunity is then their responsibility.

IN RE A.R.

[227 N.C. App. 518 (2013)]

V. Conclusion

For the foregoing reasons, we affirm and remand for the trial court to provide a visitation schedule.

AFFIRMED.

Judges HUNTER, JR., Robert N. and DILLON concur.