An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1380

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

IN THE MATTER OF:                          Mecklenburg County
                                           Nos. 13 JA 260-61
T.S., A.J.


Appeal by respondent from order entered 10 September 2013 by Judge Kimberly Best-Staton in Mecklenburg County District Court. Heard in the Court of Appeals 31 March 2014.

> *Twyla Hollingsworth-Richardson for petitioner-appellee Mecklenburg County Department of Social Services, Division of Youth and Family Services.*
>
> *Doughton Rich Blancato PLLC, by William A. Blancato for guardian ad litem.*
>
> *David A. Perez for respondent-appellant.*


DAVIS, Judge.

S.S. ("Respondent"), the mother of A.J. ("Arthur"), born in November 2000, and T.S. ("Thomas"),[1] born in October 2002, appeals from an order adjudicating the minor children to be

---

[1] Pseudonyms are used throughout this opinion to protect the privacy of the minor children and for ease of reading. N.C.R. App. P.3.1(b).

neglected and dependent juveniles. After careful review, we affirm.

## Factual Background

On 25 April 2013, the Mecklenburg County Department of Social Services, Division of Youth and Family Services ("YFS") filed a juvenile petition alleging that Arthur and Thomas were neglected and dependent juveniles. The petition alleged that (1) Respondent was abusing substances — specifically marijuana and Xanax; (2) she had left the children alone or with inappropriate supervision; and (3) the children had "miss[ed] an inordinate amount of school in Mecklenburg County." The petition also alleged that (1) Arthur's father ("Mr. H.") is disabled and lives in a nursing home; and (2) Thomas's father ("Mr. S.") had become very ill and was hospitalized. The petition indicated that Thomas had previously resided with his father but was now living with Respondent full-time due to his father's recent hospitalization. YFS obtained nonsecure custody of the children on 25 April 2013.

On 6 June 2013, Respondent entered into a Mediated Petition Agreement with YFS and the children's guardian *ad litem*. The Agreement contained stipulated facts and was prefaced by the following statement:

> This agreement is based on the parties' discussions during the mediation process and contains the parties' mutually acceptable understanding of the issues discussed. The parties acknowledge that they have entered this agreement knowingly, intelligently, voluntarily, and with a full understanding that this agreement will be submitted to the Court at the Adjudication Hearing and used by the Court to make Findings of Fact.

Respondent also entered into a Mediated Case Plan Agreement on the same day, indicating that she would like to work toward reunification with her children and would obtain a mental health assessment and comply with random drug testing.

The trial court held a hearing concerning the petition on 22 July 2013. At the hearing, the trial court asked Respondent under oath if she (1) recalled entering into the Mediated Petition Agreement; (2) had read the agreement; and (3) understood that the court would use the agreement to determine whether the children were abused, neglected, or dependent. Respondent replied affirmatively to each of these questions. The trial court then heard the arguments of counsel and ruled that based upon the stipulated facts contained in the Mediated Petition Agreement, Arthur and Thomas were neglected and dependent juveniles. The court proceeded to disposition and granted legal and physical custody of Thomas to Mr. S. and authorized a trial home placement for Arthur. On 10 September

2013, the trial court entered its written order adjudicating Arthur and Thomas to be neglected and dependent juveniles. Respondent appealed to this Court.

**Analysis**

Respondent first contends that the trial court erred by entering a consent order outside the presence, and without the consent, of Mr. H. in violation of the requirements of N.C. Gen. Stat. § 7B-801(b1)(1). A consent order "is the agreement of the parties, their decree, entered upon the record with the sanction of the court and operates as a judgment on the merits." *In re Thrift*, 137 N.C. App. 559, 562, 528 S.E.2d 394, 396 (2000) (citation, quotation marks, and alterations omitted). Because the trial court did not enter a consent order in this case, we find Respondent's argument inapposite. Instead, as discussed below, the trial court found facts that Respondent had stipulated to in the Mediated Petition Agreement to support its adjudication order. *See In re L.G.I.*, ___ N.C. App. ___, ___, 742 S.E.2d 832, 835 (2013) (holding that order adjudicating juvenile to be neglected was based on respondent's stipulations and respondent's argument that order was consent order was, therefore, meritless).

N.C. Gen. Stat. § 7B-807 provides, in pertinent part, as

follows:

> (a) If the court finds from the evidence, *including stipulations by a party*, that the allegations in the petition have been proven by clear and convincing evidence, the court shall so state. *A record of specific stipulated adjudicatory facts shall be made by either reducing the facts to a writing, signed by each party stipulating to them and submitted to the court; or by reading the facts into the record, followed by an oral statement of agreement from each party stipulating to them.*

N.C. Gen. Stat. § 7B-807(a) (2013) (emphasis added).

Here, at the beginning of the hearing, all potential witnesses were sworn. Counsel for YFS then announced that the parties had signed a Mediated Petition Agreement setting forth the facts relevant to adjudication. Respondent confirmed to the trial court that (1) she had entered into the Mediated Petition Agreement with the assistance of counsel on 6 June 2013; (2) she had read it; and (3) she understood "the Court will utilize the petition to determine whether or not your children are either . . . neglected, or dependent[.]"[2]

After hearing the parties' arguments about whether the agreed-upon facts established neglect or dependency, the trial court stated its intention to find by clear, cogent, and

---

[2] Mr. S. likewise affirmed to the court his agreement with "the portions of the petition that are regarding [him]self."

convincing evidence the "stipulated facts as agreed to by the parties in a . . . mediated petition." The trial court read the stipulated facts into the record before addressing the parties a second time "[j]ust to make sure those are the agreed upon facts." Only then did the court announce that "by clear, cogent, and convincing evidence [it] is going to adjudicate the children, [Arthur] and [Thomas], neglected and dependent in this matter." The trial court then proceeded to the dispositional stage of the proceeding and received additional evidence and testimony from the juveniles' YFS case worker and guardian *ad litem*, as well as from Mr. S. and Respondent. On 10 September 2013, the trial court entered a written order containing its findings of fact and conclusions of law. Accordingly, we conclude that the trial court properly utilized the agreed-upon statements included in the Mediated Petition Agreement as stipulated facts when adjudicating Arthur and Thomas to be neglected and dependent juveniles. N.C. Gen. Stat. § 7B-807(a).

Respondent next asserts that the facts found by the trial court do not support its adjudications of neglect and dependency. In reviewing an adjudication under N.C. Gen. Stat. § 7B-807, we must determine "'(1) whether the findings of fact are supported by "clear and convincing evidence," and (2)

whether the legal conclusions are supported by the findings of fact[.]'" *In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (quoting *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000)), *aff'd as modified*, 362 N.C. 446, 665 S.E.2d 54 (2008). Unchallenged findings are binding on appeal. *In re C.B.*, 180 N.C. App. 221, 223, 636 S.E.2d 336, 337 (2006), *aff'd per curiam*, 361 N.C. 345, 643 S.E.2d 587 (2007). The conclusion that a juvenile is abused, neglected, or dependent is reviewed *de novo*. *In re N.G.*, 186 N.C. App. 1, 15, 650 S.E.2d 45, 54 (2007), *aff'd per curiam*, 362 N.C. 229, 657 S.E.2d 355 (2008).

## I. Neglect

A "neglected juvenile" is defined, in relevant part, as "[a] juvenile who does not receive proper care, supervision, or discipline . . .; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2013). To support an adjudication of neglect, the facts must show "some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline." *In re Stumbo*,

357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003) (citation and quotation marks omitted).

In support of its adjudication, the trial court made the following pertinent findings of fact:

> 5.  YFS received this case from DSS in Union County, NC.  A referral was made to DSS there and a case was opened on these children in October 2012.
>
> 6.  The issues in the referral were that the mother was having her older son [Arthur] take inappropriate pictures of her and he was being allowed to watch pornography, the mother was abusing drugs, and she was leaving the children alone or with inappropriate supervision.  It was alleged that the mother was stealing her grandmother's and younger son's medication and replacing it with Benadryl.
>
> 7.  The referral was substantiated and a treatment case was opened with Union County DSS.
>
> 8.  The mother . . . submitted to a drug screen on 10/19/12 and tested positive for Xanax and marijuana.
>
> 9.  A case plan was developed where the mother was to address substance abuse, mental health, and parenting issues.  The mother was able to address the parenting issue, but never addressed her mental health or substance abuse issues despite many referrals and attempts to get [her] involved with services. . . .
>
> 10. The family moved to Mecklenburg County in early 2013 when their home in Union County was foreclosed.  The mother's

grandmother owns a house in the [county] and the mother, children and grandmother/great grandmother moved into that house. The DSS case was transferred to Mecklenburg County.

11. The case was assigned to YFS worker Kelly Griffin. . . . [O]n 22 March 2013[,] Ms. Griffin gave the mother contact information for MeckLink so the mother could have a mental health assessment through Monarch. The mother told Ms. Griffin she would follow through. . . .

12. Ms. Griffin was also going to provide the mother a referral to McLeod for a substance abuse assessment. Ms. Griffin went to the family's home on 25 March 2013, but the mother was not there.

13. Ms. Griffin returned to the home on 28 March 2013 and again the mother was not there. Ms. Griffin had attempted to call the mother on several occasions and left messages, but received no response.

14. On 27 March 2013, [Respondent] was arrested and jailed in Union County for failing to appear in court. [She] had pending assault charges from an incident in 2012.

15. The mother was attacked by a friend on 27 March 2013. . . . The friend came in the family's home and attacked [her] with a hammer. The children were in the mother's care at this time, had to see their mother in that condition, and witnessed the altercation that led to their mother's injuries. The mother's eyes were black and blue and she had other facial injuries.

16. YFS heard nothing from the mother until 16 April 2013 when Ms. Griffin made an unannounced home visit. She encountered

[Respondent] who told her she had suffered head injuries and migraine headaches and had been unable to follow up with her. Ms. Griffin had learned about [Respondent] being in jail through contact with [Thomas]'s father.

17. The mother initially denied she had been told to contact MeckLink, but later admitted she had just not called them. . . . The mother called MeckLink on 18 April 2013.

18. The mother told Ms. Griffin [Arthur] had left the home without permission and she did not know where he had gone. The mother reported that this was his second time leaving the home without permission.

19. Ms. Griffin encouraged the mother to look for [Arthur]. . . . [He] was found at a school's basketball court with some friends. [He] took off running when he saw his mother pull up, but came back when Ms. Griffin called his name. Ms. Griffin spoke with [Arthur] and he reported he was not happy in general.

20. [Respondent] agreed to come to Ms. Griffin's office on 18 April 2013 and pick up a referral for a McLeod assessment.

21. The mother did not come on the 18th. She called and said she did not have any gas.

22. As of 25 April 2013, the mother has not had a substance abuse or mental health assessment even though she has been involved with DSS in Union and Mecklenburg Counties for over 6 months. [Arthur] missed over 30 days of school (unexcused absences) the first 60 days the boys were to attend school in [Charlotte-Mecklenburg]. [Thomas] has over 10 unexcused absences.

As discussed above, Respondent stipulated to these facts under oath at the hearing. Thus, the only remaining issue before us is whether the trial court's findings support its conclusion that the juveniles were neglected at the time YFS filed its petition on 25 April 2013. *See T.H.T.*, 185 N.C. App. at 343, 648 S.E.2d at 523 ("The role of this Court in reviewing a trial court's adjudication of neglect . . . is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." (citation and quotation marks omitted)).

We hold that the trial court's findings support its conclusion that the juveniles were neglected. The trial court's findings indicate that Arthur and Thomas were not receiving "proper care . . . [and] supervision" and "live[d] in an environment injurious to [their] welfare" at the time the petition was filed on 25 April 2013. N.C. Gen. Stat. § 7B-101(15). Specifically, (1) the exposure to a disturbing act of violence in the home; (2) the inappropriate supervision and Arthur's unsupervised flight from the home on at least two occasions; and (3) both juveniles' substantial number of unexcused absences from school following their move to

Mecklenburg County are facts sufficient to establish their status as neglected juveniles. *See In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 241 (2006) (holding that juvenile's "exposure to an environment of violence" supported adjudication of neglect); *In re McMillan*, 30 N.C. App. 235, 238, 226 S.E.2d 693, 695 (1976) ("It is fundamental that a child who receives proper care and supervision in modern times is provided a basic education.").

Respondent argues that there was no showing that her substance abuse or her failure to obtain mental health and substance abuse assessments harmed her children or posed a substantial risk of such harm. *See In re E.P.*, 183 N.C. App. 301, 307, 645 S.E.2d 772, 776 (upholding dismissal of juvenile petitions absent "evidence that the children had been harmed because of respondents' substance abuse or that the children were exposed to a substantial risk of harm"), *aff'd per curiam*, 362 N.C. 82, 653 S.E.2d 143 (2007). We believe, however, that a parent's illicit drug use, noncooperation with YFS, and inaction on her case plan are relevant factors in assessing the risk of harm to children in her care. *See In re C.M.*, 183 N.C. App. 207, 212, 644 S.E.2d 588, 593 (2007) (concluding that respondents' failure to comply with case plan supported trial

court's conclusion that juvenile was neglected and that "the neglect was likely to result in physical, mental, or emotional impairment or a substantial risk of such impairment").

Respondent asserts that the violent assault that occurred in the home is not relevant to a determination of neglect and that she "cannot be found to have neglected her children by having been violently assaulted by a friend[.]"  However, a child's exposure to violence is relevant in determining if that child is "liv[ing] in an environment injurious to [his] welfare," whether the respondent is — or is not — the perpetrator of the violence.  *See In re C.M.*, 198 N.C. App. 53, 66, 678 S.E.2d 794, 802 (2009) (concluding that domestic violence by father towards mother in presence of juveniles created injurious environment "in that it involved violence"); *In re Helms*, 127 N.C. App. 505, 512, 491 S.E.2d 672, 676 (1997) (holding that juvenile was in injurious environment and respondent placed juvenile at risk by repeatedly exposing her to "violent individuals").

Respondent also makes a similar argument regarding the trial court's failure to make a finding as to the reason for the juveniles' many unexcused absences from school.  Respondent's arguments are not persuasive, however, because at the

adjudicatory stage of an abuse, neglect, or dependency proceeding, the juvenile's status — rather than the degree of fault attributable to the parent — is the determinative issue and paramount consideration. *In re B.M.*, 183 N.C. App. 84, 90, 643 S.E.2d 644, 647 (2007). Accordingly, this Court has emphasized that "[t]he purpose of the adjudication and disposition proceedings should not be morphed on appeal into a question of culpability regarding the conduct of an individual parent." *In re J.S.*, 182 N.C. App. 79, 86, 641 S.E.2d 395, 399 (2007).

## II. Dependency

Respondent next challenges the trial court's conclusion that Arthur and Thomas were dependent juveniles. The Juvenile Code defines a dependent juvenile, in pertinent part, as one "in need of assistance or placement because . . . the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9). "Under this definition, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d

403, 406 (2005).

In light of her position that the adjudication of neglect was improper, Respondent asserts that "she cannot be demonstrated as having been 'unable' to provide for the proper care and supervision of either juvenile." Respondent further contends that the trial court's findings failed to show the lack of "an alternative child care arrangement at the time of the filing of the juvenile petition."

"Our courts have, however, consistently held that in order for a parent to have an appropriate alternative child care arrangement, the parent must have taken some action to identify viable alternatives." *In re L.H.*, 210 N.C. App. 355, 364, 708 S.E.2d 191, 197 (2011). Moreover, an adjudication under N.C. Gen. Stat. § 7B-807 must be based on the facts existing at the time the juvenile petition was filed. *See In re A.B.*, 179 N.C. App. 605, 609, 635 S.E.2d 11, 14-15 (2006) (ruling post-petition evidence inadmissible at adjudicatory stage or hearing).

The trial court made the following additional findings relevant to Arthur's and Thomas's status as dependent juveniles:

> 23. [Thomas] is diagnosed with Asperger's Syndrome. [His] father, who does not live with the family, decided to have [Thomas] live with him after he was notified about [Thomas]'s absences. Mr. [S.] was dropping [Thomas] off at [Respondent's] home in the

morning so she could take him to school. Mr. [S.] would pick him up at 4:30 PM after school. [Thomas] would spend nights and weekends with his father due to [Respondent's] injuries from the 27 March 2013 incident.

24. Mr. [S.] became very ill and was in the hospital when the Juvenile Petition was filed. [Thomas] had returned to his mother's home full time due to Mr. [S.]'s illness.

25. [Arthur]'s father . . . is disabled and lives in a nursing home in Wilmington, NC. [Respondent] does not know the name of the facility. Ms. Griffin completed a search on [Mr. H.], but was unable to obtain any additional information.

26. YFS is not aware of any relative or fictive kin who live in North Carolina who are willing or able to provide placement for [Arthur]. Ms. Griffin has obtained contact information for [Thomas]'s paternal grandparents as a potential placement. Mr. [S.]'s fiancée has expressed an interest in caring for [Thomas].

Taken together with the findings supporting the adjudication of neglect, we conclude these findings support the court's conclusions that (1) neither Respondent nor the juveniles' fathers were able to parent the juveniles at the time the petition was filed; and (2) no appropriate alternative placements then existed.

In *In re T.B.*, 203 N.C. App. 497, 692 S.E.2d 182 (2010), this Court upheld an adjudication of dependency based upon the

trial court's determination that (1) the respondent and her partner were unable to "meet the substantial needs of the children," *id.* at 506, 692 S.E.2d at 188; and (2) "[c]ustody with a relative is not an option as no relative has been identified as a potential placement option," *id.* at 502-03, 692 S.E.2d at 186. In the present case, the trial court's findings reflect that the juveniles were neglected while in Respondent's care and that she failed to take action to address the issues identified in her case plan. *See P.M.*, 169 N.C. App. at 428, 610 S.E.2d at 406-07 (stating that "a failure to comply with court-ordered protection plans may establish an inability to care for or supervise a child if the plans were adopted to ensure proper care and supervision of the child"). Findings of fact 24 and 25 further showed that Mr. S. was hospitalized and thus unavailable as a placement option at the time the petition was filed and that Mr. H. also lacked the capacity to provide care.

Finally, we hold that finding of fact 26 is sufficient to demonstrate the lack of an available alternative placement option for either child as of the date of the petition. While Respondent observes that finding 26 does not foreclose the existence of an out-of-state placement for Arthur and identifies

two potential options for Thomas, she does not contend that either she or the fathers affirmatively identified an appropriate placement to YFS.  *See L.H.*, 210 N.C. App. at 366, 708 S.E.2d at 198 ("Having an appropriate alternative childcare arrangement means that the parent [her]self must take some steps to suggest a childcare arrangement . . . ."); *In re D.J.D.*, 171 N.C. App. 230, 239, 615 S.E.2d 26, 32 (2005) (affirming juveniles' adjudication as dependent "since their parents were neither able to care for them nor did they suggest appropriate alternate placements").

## Conclusion

For the reasons stated above, we affirm the trial court's order adjudicating Arthur and Thomas to be neglected and dependent juveniles.

AFFIRMED.

Judges HUNTER, JR. and ERVIN concur.

Report per Rule 30(e).