IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-353

 Filed: 18 October 2016

Buncombe County, No. 15 JA 187

IN THE MATTER OF: G.T.

 Appeal by respondent-mother from orders entered 3 and 26 February 2016 by

Judge Ward D. Scott in Buncombe County District Court. Heard in the Court of

Appeals 19 September 2016.

 Matthew J. Putnam for petitioner-appellee Buncombe County Department of
 Social Services.

 Joyce L. Terres for respondent-appellant mother.

 Michael N. Tousey for guardian ad litem.

 McCULLOUGH, Judge.

 Respondent-mother appeals from: (1) an adjudication order concluding that

G.T. (“Gavin”)1 was a neglected and dependent juvenile; and (2) a disposition order

concluding that it was in the juvenile’s best interest to remain in the custody of the

Buncombe County Department of Health and Human Services (“DHHS”) and that

reasonable reunification efforts with respondent-mother shall cease. After careful

review, we affirm the trial court’s adjudication order, but reverse the disposition order

in part.

 1 A pseudonym is used to protect the identity of the juvenile and for ease of reading.
 IN RE: G.T.

 Opinion of the Court

 I. Background

 In early July 2015, DHHS obtained non-secure custody of Gavin and filed a

petition alleging that he was a neglected and dependent juvenile. Gavin was a

newborn at the time, and both he and his mother were still in the hospital. The

petition alleged that respondent-mother used marijuana, methamphetamine, and

cocaine during her pregnancy, and that Gavin had a rapid heartbeat and was showing

signs of withdrawal. Gavin’s toxicology results were still pending at the time of the

petition. The petition also alleged that respondent-mother was belligerent and

combative with hospital staff, refused to take her psychiatric medication, and was

being held on an involuntary commitment. During one instance, respondent-mother

had to be restrained and Gavin removed from her arms. Further, the petition alleged

that respondent-mother had a domestic violence protective order (“DVPO”) against

Gavin’s father. He allegedly stabbed respondent-mother and dislocated her jaw, had

several criminal charges pending as a result, and had a concerning criminal history.

 The trial court held a hearing on 12 November 2015 and subsequently entered

an adjudication and interim disposition order. Respondent-mother stipulated that

the allegations contained in the petition, with some modifications, could be found as

fact by the trial court by clear and convincing evidence. Based on the stipulated

findings of fact, the trial court concluded that Gavin was a neglected and dependent

 2
 IN RE: G.T.

 Opinion of the Court

juvenile. In the interim disposition portion of the order, the trial court concluded that

it was in Gavin’s best interest to remain in DHHS custody.

 The trial court held a disposition hearing on 3 December 2015 and

subsequently entered a disposition order. The trial court concluded that it was in

Gavin’s best interest to remain in DHHS custody. The trial court also directed that,

pursuant to N.C. Gen. Stat. § 7B-901(c) (2015), reasonable reunification efforts with

respondent-mother shall cease. This conclusion was based upon the trial court’s

finding that Gavin was subjected to chronic or toxic exposure to controlled substances

that resulted in impairment of and addiction in Gavin at birth. Respondent-mother

timely appeals.2

 II. Discussion

 A. Adjudication of Neglect

 On appeal, respondent-mother first challenges the trial court’s adjudication of

neglect. Review of a trial court’s adjudication of neglect requires a determination as

to (1) whether clear and convincing evidence supports the findings of fact, and

(2) whether the findings of fact support the legal conclusions. In re Pittman, 149 N.C.

App. 756, 763-64, 561 S.E.2d 560, 566 (2002) (citation omitted). “In a non-jury neglect

adjudication, the trial court’s findings of fact supported by clear and convincing

competent evidence are deemed conclusive, even where some evidence supports

 2 The father was a party to the trial court proceedings but does not appeal.

 3
 IN RE: G.T.

 Opinion of the Court

contrary findings.” In re Helms, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997)

(citations omitted). If competent evidence supports the findings, they are “binding on

appeal.” In re McCabe, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003) (citations

omitted). Here, respondent-mother does not dispute the fact that her stipulation to

the findings of fact was proper. As a result, the findings of fact are presumed to be

supported by competent evidence and are binding on appeal. See In re M.D., 200 N.C.

App. 35, 43, 682 S.E.2d 780, 785 (2009).

 Respondent-mother, however, argues that the trial court’s findings of fact are

not sufficient to support the trial court’s conclusion that Gavin was a neglected

juvenile. She contends that none of the trial court’s findings of fact relate to her care

of Gavin, show that Gavin suffered an impairment, or prove a nexus between her

drug use and any harm to Gavin. We disagree.

 A neglected juvenile is defined as:

 A juvenile who does not receive proper care, supervision, or
 discipline from the juvenile’s parent, guardian, custodian,
 or caretaker; or who has been abandoned; or who is not
 provided necessary medical care; or who is not provided
 necessary remedial care; or who lives in an environment
 injurious to the juvenile’s welfare; or who has been placed
 for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2015). Additionally, this Court has consistently

required that “there be some physical, mental, or emotional impairment of the

juvenile or a substantial risk of such impairment as a consequence of the failure to

 4
 IN RE: G.T.

 Opinion of the Court

provide proper care, supervision, or discipline in order to adjudicate a juvenile

neglected.” In re McLean, 135 N.C. App. 387, 390, 521 S.E.2d 121, 123 (1999)

(internal quotations omitted) (emphasis in original).

 In arguing that the findings do not support an adjudication of neglect,

respondent-mother focuses largely on the findings of fact regarding her drug use

while pregnant. However, she overlooks the fact that the trial court made findings

regarding the father’s domestic violence towards her and took judicial notice of

respondent-mother’s DVPO, both of which support the adjudication of neglect. In the

DVPO, a district court found as follows: the father placed respondent-mother in the

fear of imminent serious bodily injury; he placed her in the fear of continued

harassment that rises to such a level as to inflict substantial emotional distress; he

inflicted serious injury upon respondent-mother in that he dislocated her jaw and

stabbed her; and he made threats to kill or seriously injure respondent-mother. As a

result of these findings, the district court entered a no-contact order against the

father. Furthermore, the stipulated findings show that the father was charged

criminally based on his actions, that he held a gun to respondent-mother’s head, and

that he threatened to kill her. Despite the no-contact order, the father was at the

hospital following Gavin’s birth.

 Respondent-mother’s erratic behavior in the hospital also supports the

adjudication of neglect. The findings demonstrate that respondent-mother was being

 5
 IN RE: G.T.

 Opinion of the Court

held on an involuntary commitment, that she was belligerent towards hospital staff,

and that the hospital staff would not permit respondent-mother to be alone with

Gavin.

 Lastly, the findings clearly show that respondent-mother used controlled

substances during her pregnancy. She originally admitted to using marijuana,

cocaine, and methamphetamine. She later altered her story, claiming that the father

laced her marijuana with cocaine and denying the use of methamphetamine. It was

well within the trial court’s discretion to believe her original admission. However,

even if respondent-mother’s story is believed, she still admitted to using illegal drugs

while pregnant. Therefore, contrary to respondent-mother’s assertion, the findings

of fact sufficiently establish that Gavin suffered actual exposure to controlled

substances while in utero.

 We therefore conclude that the findings were sufficient for the trial court to

conclude that Gavin did not receive proper care, supervision, or discipline from his

parent and that he lived in an environment injurious to his welfare. Gavin suffered

an actual impairment due to his exposure to controlled substances, and respondent-

mother’s erratic behavior and disregard for the DVPO exposed him to a substantial

risk of impairment. Additionally, we have repeatedly held that it is proper for a trial

court to adjudicate a juvenile neglected, even if the juvenile never actually resided in

the parent’s home, as is the case here. See, e.g., In re B.M., 183 N.C. App. 84, 89, 643

 6
 IN RE: G.T.

 Opinion of the Court

S.E.2d 644, 647 (2007) (affirming an adjudication of neglect where a nine-day-old was

removed from the mother’s custody after testing positive for cocaine, the mother

admitted to using cocaine prior to the juvenile’s birth, there was domestic violence

between the parents, and the mother refused to sign a safety agreement); see also In

re A.S., 190 N.C. App. 679, 690, 661 S.E.2d 313, 320 (2008), aff’d., 363 N.C. 254, 675

S.E.2d 361 (2009) (“When . . . the juvenile being adjudicated has never resided in the

parent’s home, the decision of the trial court must of necessity be predictive in nature,

as the trial court must assess whether there is a substantial risk of future abuse or

neglect of a child based on the historical facts of the case.”) (internal quotation marks

and citation omitted). Accordingly, we conclude that the trial court did not err in

concluding that Gavin was a neglected juvenile.

 B. Dispositional Determination

 Next, respondent-mother challenges the trial court’s dispositional

determination to cease reasonable reunification efforts pursuant to N.C. Gen. Stat.

§ 7B-901(c) (2015).

 In 2015, the North Carolina General Assembly made amendments to our

Juvenile Code, specifically to those sections pertaining to permanency planning

hearings and orders, the implementation of permanent plans, and the cessation of

reunification efforts with a parent. See N.C. Sess. L. 2015-136. Because the

amendments apply to all actions filed or pending on or after 1 October 2015, they are

 7
 IN RE: G.T.

 Opinion of the Court

applicable to the instant case. As part of the amendments, the General Assembly

added subsection (c) to N.C. Gen. Stat. § 7B-901, the section governing a trial court’s

initial disposition hearing. The new subsection (c) permits the trial court to cease

reunification efforts at an initial disposition hearing under certain circumstances.

This section provides, in pertinent part, as follows:

 (c) If the disposition order places a juvenile in the
 custody of a county department of social services, the
 court shall direct that reasonable efforts for
 reunification as defined in G.S. 7B-101 shall not be
 required if the court makes written findings of fact
 pertaining to any of the following:

 (1) A court of competent jurisdiction has
 determined that aggravated circumstances
 exist because the parent has committed or
 encouraged the commission of, or allowed the
 continuation of, any of the following upon the
 juvenile:

 a. Sexual abuse.
 b. Chronic physical or emotional abuse.
 c. Torture.
 d. Abandonment.
 e. Chronic or toxic exposure to alcohol or
 controlled substances that causes
 impairment of or addiction in the
 juvenile.
 f. Any other act, practice, or conduct that
 increased the enormity or added to the
 injurious consequences of the abuse or
 neglect.

 (2) A court of competent jurisdiction has
 terminated involuntarily the parental rights
 of the parent to another child of the parent.

 8
 IN RE: G.T.

 Opinion of the Court

 (3) A court of competent jurisdiction has
 determined that (i) the parent has committed
 murder or voluntary manslaughter of another
 child of the parent; (ii) has aided, abetted,
 attempted, conspired, or solicited to commit
 murder or voluntary manslaughter of the
 child or another child of the parent; (iii) has
 committed a felony assault resulting in
 serious bodily injury to the child or another
 child of the parent; (iv) has committed sexual
 abuse against the child or another child of the
 parent; or (v) has been required to register as
 a sex offender on any government-
 administered registry.

N.C. Gen. Stat. § 7B-901(c)(1)-(3) (2015).

 In the instant case, the trial court concluded that reasonable reunification

efforts with respondent-mother were not required. This conclusion was based upon

the following ultimate finding:

 Pursuant to N.C.G.S. § 7B-901(c), the Court hereby directs
 that reasonable reunification efforts with the respondent
 mother are not required as a result of:

 a. The respondent mother’s admission of continued
 substance abuse resulting in impairment of, and
 addiction in, the juvenile at birth.

 b. Respondent mother’s apparent lack of
 understanding or concern about the toxic effect of
 chronic substance abuse on the minor child.

 9
 IN RE: G.T.

 Opinion of the Court

Thus, the trial court’s determination to cease reunification efforts was based on

subsection (c)(1)(e): chronic or toxic exposure to alcohol or controlled substances that

causes impairment of or addiction in the juvenile.

 Respondent-mother challenges the trial court’s determination based on several

grounds. She first argues the statute’s use of the term “has determined” must

reference a prior adjudication hearing. Therefore, she argues, the statute directs the

trial court to make the determination regarding chronic or toxic exposure to

controlled substances in a prior adjudication order. Respondent-mother argues that

because the trial court here made the determination in a disposition order, it is

erroneous. For the reasons that follow, we agree.

 The issue raised by respondent-mother is one of statutory interpretation. Our

Supreme Court has repeatedly held that “[s]tatutory interpretation properly begins

with an examination of the plain words of the statute.” Lanvale Properties, LLC v.

Cty. of Cabarrus, 366 N.C. 142, 154, 731 S.E.2d 800, 809 (2012) (internal quotation

marks and citations omitted). “ ‘Questions of statutory interpretation are questions

of law[.] . . . The primary objective of statutory interpretation is to give effect to the

intent of the legislature. The plain language of a statute is the primary indicator of

legislative intent.’ ” Purcell v. Friday Staffing, 235 N.C. App. 342, 346-47, 761 S.E.2d

694, 698 (2014) (quoting First Bank v. S & R Grandview, L.L.C., 232 N.C. App. 544,

546, 755 S.E.2d 393, 394 (2014) (internal citations omitted)). “If the language of the

 10
 IN RE: G.T.

 Opinion of the Court

statute is clear and is not ambiguous, we must conclude that the legislature intended

the statute to be implemented according to the plain meaning of its terms.” Lanvale

Properties, 366 N.C. at 154, 731 S.E.2d at 809 (quotation marks and citations

omitted).

 Section 7B-901(c)(1), in pertinent part, states that the trial court shall direct

reasonable reunification efforts to cease if the trial court makes a finding that:

 (1) A court of competent jurisdiction has determined
 that aggravated circumstances exist because the
 parent has committed or encouraged the commission
 of, or allowed the continuation of, any of the
 following upon the juvenile:

 ....

 e. Chronic or toxic exposure to alcohol or
 controlled substances that causes impairment
 of or addiction in the juvenile.

N.C. Gen. Stat. § 7B-901(c)(1)(e) (emphasis added). Thus, the dispositional court

must make a finding that “[a] court of competent jurisdiction has determined” that

the parent allowed one of the aggravating circumstances to occur. We conclude that

the language at issue is clear and unambiguous and that in order to give effect to the

term “has determined,” it must refer to a prior court order. The legislature

specifically used the present perfect tense in subsections (c)(1) through (c)(3) to define

the determination necessary. Use of this tense indicates that the determination must

have already been made by a trial court—either at a previously-held adjudication

 11
 IN RE: G.T.

 Opinion of the Court

hearing or some other hearing in the same juvenile case, or at a collateral proceeding

in the trial court. The legislature’s use of the term “court of competent jurisdiction”

also supports this position. Use of this term implies that another tribunal in a

collateral proceeding could have made the necessary determination, so long as it is a

court of competent jurisdiction.

 We further find that the legislature’s use of a contrasting verb tense in the

main body of Section 7B-901(c) supports our statutory interpretation. Rather than

using the present perfect tense, the main body states that the trial court “shall direct”

reunification efforts to cease if the court “makes written findings of fact.” N.C. Gen.

Stat. § 7B-901(c) (emphasis added). Had the legislature intended for the trial court

to make the determination at a disposition proceeding, the verb tense used in

subsection (1) would have mirrored that of the main body of Section 7B-901(c). Thus,

by our plain reading of the statute, if a trial court wishes to cease reunification efforts

pursuant to N.C. Gen. Stat. § 7B-901(c)(1)(e), it must make findings at disposition

that a court of competent jurisdiction has already determined that the parent allowed

the continuation of chronic or toxic exposure to alcohol or controlled substances that

causes impairment of or addiction in the juvenile.

 Here, the trial court made no such finding. The adjudication order contains no

ultimate finding of fact that respondent-mother allowed the continuation of chronic

or toxic exposure to controlled substances that caused impairment of or addiction in

 12
 IN RE: G.T.

 Opinion of the Court

Gavin. Although the trial court’s adjudication order contains anecdotal evidence

regarding respondent-mother’s drug use while pregnant, the findings state that the

toxicology results were still pending, and the findings regarding Gavin’s withdrawal

and impairment were framed in terms of allegations received by DHHS, not in terms

of conclusive findings of fact. Therefore, while the overall findings of fact were

sufficient to sustain an adjudication of neglect, the specific findings related to Gavin’s

exposure to controlled substances were not sufficient to sustain an ultimate finding

pursuant to N.C. Gen. Stat. § 7B-901(c)(1)(e).

 Because the trial court erroneously concluded that reasonable reunification

efforts must cease pursuant to N.C. Gen. Stat. § 7B-901(c)(1)(e), we reverse that

portion of the trial court’s disposition order.

 C. Denial of Respondent-Mother’s Continuance

 In her final argument, respondent-mother essentially contends that the trial

court erred by denying her a continuance to prepare for a hearing on the issue of

whether the trial court was required to cease reasonable reunification efforts

pursuant to N.C. Gen. Stat. § 7B-901(c). Respondent-mother argues that she did not

have notice of the guardian ad litem’s intent to raise the issue at the disposition

hearing, and that she has a right to notice and effective representation. She further

contends that by denying a continuance of the matter, the trial court denied her

effective assistance of counsel. However, because we have reversed the trial court’s

 13
 IN RE: G.T.

 Opinion of the Court

dispositional determination ceasing reunification efforts pursuant to N.C. Gen. Stat.

§ 7B-901(c), her argument is mooted. Accordingly, we need not address respondent-

mother’s final argument on appeal.

 AFFIRMED AS TO ADJUDICATION ORDER; REVERSED IN PART AS TO

DISPOSITION ORDER.

 Judge DILLON concurs in part and dissents in part in a separate opinion.

 Judge ENOCHS concurs

 14
 No. COA16-353 – IN RE: G.T.

 DILLON, Judge, concurring in part and dissenting in part.

 I. Discussion

 A. Adjudication of Neglect

 I concur with the majority that the trial court did not err in concluding that

Gavin was a neglected juvenile at the adjudication phase of the proceeding.

 B. Dispositional Determination

 I dissent from the majority’s conclusion that the trial court erred by directing

that reasonable reunification efforts must cease pursuant to N.C. Gen. Stat. § 7B-

901(c)(1)e. in its Initial Dispositional Order.3

 The version of N.C. Gen. Stat. § 7B-901(c)(1)e. applicable to this proceeding

provides that if the trial court finds that “[a] court of competent jurisdiction has

determined that” one of the aggravated circumstances enumerated in the statute

exists, then the trial court must “direct that reasonable efforts for reunification . . .

shall not be required[.]” N.C. Gen. Stat. § 7B-901(c)(1)e. (2013). 4

 3 The trial court did not demand that the county reunification efforts cease. Rather, the court
simply stated that the county was “not required” to use reasonable efforts for reunification, tracking
the language of N.C. Gen Stat. § 7B-901(c).
 4 This statute has since been amended (during the 2016 short session) to provide the trial court

more discretion. Specifically, under the statute’s current version, even where the trial court makes a
finding concerning the existence of an aggravated circumstance, the trial court may, nonetheless,
direct that reasonable efforts for reunification continue if the trial court “concludes that there is
compelling evidence warranting continued reunification efforts[.]” 2016 Appropriations Act, §
12C.1.(g), Session Law 2016-94 (codified as amended at N.C. Gen. Stat. § 7B-901(c)(2016)).
 IN RE: G.T.

 DILLON, J., concurring in part and dissenting in part

 In the present case, the court determined itself that one of the enumerated,

aggravated circumstances did exist; namely, that Mother has “allowed the

continuation” of “[c]hronic or toxic exposure to alcohol or controlled substances that

causes impairment of [Gavin].” Id. The court’s determination was based on its

findings that Mother had used controlled substances while she was pregnant with

Gavin, that Gavin was currently impaired and was undergoing treatment due to his

exposure to these drugs, and that Mother still used and intended to continue using

illegal drugs. Specifically, the trial court found that: (1) Mother “tested positive for

benzos”; (2) Mother admitted that she was currently using marijuana; (3) Gavin “has

withdrawal symptoms and has been on methadone for months, which shows the toxic

effects of chronic exposure to [Mother’s] use of controlled substances during

pregnancy”; and (4) Mother “intends to continue to use marijuana despite the impact

her illegal drug use has had on her ability to parent.” Accordingly, the trial court

concluded that reasonable efforts for reunification were not required pursuant to N.C.

Gen. Stat. § 7B-901(c)(1)e.

 The majority concludes that the trial court erred in directing that reasonable

efforts for reunification were not required. The majority reaches this conclusion

based on its reading of a portion of N.C. Gen. Stat. § 7B-901(c), which provides that

the trial court (at the initial dispositional hearing stage) shall direct that

reunification efforts no longer be required if that court finds that “[a] court of

 2
 IN RE: G.T.

 DILLON, J., concurring in part and dissenting in part

competent jurisdiction has determined that” an aggravated circumstance exists. N.C.

Gen. Stat. § 7B-901(c). The majority reads this language to mean that the trial court

cannot direct that reunification efforts are no longer required based on its own

determination that an aggravated circumstance exists. Rather, the majority reads

the statutory language to mean that the determination regarding the existence of an

aggravated circumstance must be made in some prior order by a court of competent

jurisdiction, either in the same cause or in some other proceeding.

 I disagree with the majority’s restrictive reading of N.C. Gen. Stat. § 7B-901(c).

I agree with the majority that the statutory language provides that the trial court at

the initial dispositional hearing stage may rely on a determination made in some

prior order. But I also believe that the General Assembly intended that the court at

that stage could itself consider evidence and determine the existence of an aggravated

circumstance, and, based on its own determination, conclude that “a court of

competent jurisdiction” has made the determination sufficient to relieve DSS from

having to pursue reunification. Certainly, the Buncombe County District Court is “a

court of competent jurisdiction,” whether at the initial dispositional hearing phase or

at some prior stage of the proceeding. And, here, that court at the initial dispositional

phase “has determined” that an aggravated circumstance exists.

 Under the majority’s interpretation of the statute, the trial court here would

not have committed error if it had simply entered two separate orders, instead of one;

 3
 IN RE: G.T.

 DILLON, J., concurring in part and dissenting in part

namely, an order determining the existence of the aggravated circumstance and then

an initial dispositional order based on the first order’s determination. However,

under the majority’s interpretation, the trial court here committed error simply by

issuing a single order combining these two steps. I do not think this result was

intended by the General Assembly, and this result is certainly not compelled by the

phrase “has determined” in the statute. Rather, I believe that the General Assembly

intended that a trial court, even at the initial dispositional hearing phase, continued

to have authority to consider any reliable evidence and make any determination(s)

based on that evidence as to the presence of an aggravated circumstance in its effort

to determine the appropriate plan for the juvenile. See In re Vinson, 298 N.C. 640,

666, 260 S.E.2d 591, 607 (1979) (discussing the broad powers of the district court to

consider evidence and matters at the dispositional phase).

 C. Denial of Mother’s Continuance

 Mother argues that the trial court erred in denying her a continuance to

prepare for a hearing, contending that she was not aware that the issue regarding

reunification efforts would be raised. The majority held that this issue was moot

based on its reversal of the dispositional order. I would reach this third issue.

 Based on my review of the record, I conclude that the trial court did not err in

proceeding with the hearing. Here, competent evidence demonstrates that Gavin was

exposed to toxic substances during the pregnancy and that he was required to receive

 4
 IN RE: G.T.

 DILLON, J., concurring in part and dissenting in part

treatment from birth for many months. Mother stipulated that she used cocaine,

methamphetamines, and marijuana during the pregnancy. There were undisputed

reports that Gavin was receiving methadone to treat his addiction and that he was

suffering from tremors. See In re L.G.I., 227 N.C. App. 512, 515-16, 742 S.E.2d 832,

835 (2013) (determining that evidence of illegal drugs in a newborn’s system coupled

with the mother’s admission that she used illegal drugs during the pregnancy is

sufficient to support a conclusion that the mother’s drug use caused the presence of

illegal drugs in her newborn). This evidence was sufficient to sustain the trial court’s

determination that Gavin was impaired due to his exposure to illegal drugs consumed

by Mother during the pregnancy; and the trial court did not err in proceeding with

the hearing. See In re Vinson, 298 N.C. at 669, 260 S.E.2d at 608 (stating that a trial

court may consider matters not raised in the petition during a dispositional hearing,

so long as the information is reliable, accurate, and competently obtained).

 II. Conclusion

 My vote is to affirm Judge Scott’s orders.

 5