DAVIS, Judge.
 

 *71
 
 This case requires us to examine (1) the requirements for a valid consent adjudication order in an abuse, neglect or dependency case; and (2) the extent to which findings in a pre-hearing order can be used to support an
 
 *916
 
 adjudication of neglect. A.F. ("Respondent") appeals from adjudication and disposition orders finding her daughter R.L.G. ("Rory")
 
 [1]
 
 to be a neglected juvenile and continuing her custody with the Brunswick County Department of Social Services ("DSS"). Because we conclude the trial court's determination that Rory was a neglected juvenile was not supported by sufficient evidence or findings of fact, we vacate the adjudication and disposition orders and remand the case to the trial court for further proceedings.
 

 Factual and Procedural Background
 

 Respondent is the mother of Rory, who was born in August 2006. On 25 June 2017, DSS obtained non-secure custody of Rory and filed a petition in Brunswick County District Court alleging that she was a neglected and dependent juvenile. In its petition, DSS stated that in 2013 the Bladen County Department of Social Services had substantiated allegations that Rory was sexually abused by Respondent's boyfriend. The petition further asserted that the boyfriend lived in Respondent's home with Rory and that Respondent had not expressed any concerns
 
 *72
 
 regarding the abuse. In addition, the petition alleged that Rory had also recently been the victim of sexual abuse inflicted by a family friend. According to the petition, Respondent did not seek therapy for Rory as recommended by DSS and failed to meet with the District Attorney's office on two occasions to assist with the prosecution of the case. Finally, the petition stated that Respondent had been unable to provide Rory with an alternative childcare arrangement since 2013.
 

 On 6 July 2017, DSS filed a motion to amend the 25 June 2017 petition to include additional allegations. The amended petition stated,
 
 inter alia
 
 , that Rory was absent from school for twenty-five days during the 2016-17 school year and was tardy on thirty-seven occasions. The motion to amend the petition was subsequently allowed by the court.
 

 The trial court conducted a pre-adjudication hearing on 12 July 2017, and on 21 July 2017 the trial court entered an "Order on Pre-Hearing." An adjudication hearing was held on 16 August 2017. At this hearing, DSS read the following prepared admission by Respondent into the record:
 

 That admission is that the juvenile is a neglected juvenile in that she did not receive proper care and supervision by her mother in that her mother did not ensure the child attended school regularly, having missed 25 days during the 2016-17 calendar year and having been tardy 37 times. The child did not pass the core classes of English, science, and social studies, and a copy of the report card is tendered in support of said admission. In addition, the mother has not taken the child to well care visits with a physician to address her medical needs.
 

 Respondent stated under oath her agreement to the truth of the above-quoted admission. At that point, the trial court stated that it would "accept the admission and adjudicate based upon the neglect."
 
 [2]
 
 Morgan Traynham (a social worker for DSS) and Roberta Lerner (the guardian
 
 ad litem
 
 for Rory) testified with regard to a potential trial home placement with Rory's father and the possibility of supervised visitation between Respondent and Rory.
 

 On 13 September 2017, the trial court entered an order (the "Adjudication Order") adjudicating Rory to be a neglected juvenile. That same day, the trial court entered a separate disposition order that (1) continued custody of Rory with DSS; (2) granted Respondent
 
 *73
 
 supervised visitation; and (3) ordered DSS to pursue the goal of reunification with Respondent. Respondent filed a timely notice of appeal.
 
 [3]
 

 Analysis
 

 I. Trial Court's Order as a Consent Adjudication Order
 

 "[T]he Juvenile Code provides two procedural paths for an adjudication of
 
 *917
 
 abuse, neglect, or dependency: an adjudicatory hearing or an adjudication by consent."
 
 In re J.S.C.
 
 , --- N.C. App. ----, ----,
 
 800 S.E.2d 126
 
 , 128 (2017). A consent adjudication "is the agreement of the parties, their decree, entered upon the record with the sanction of the court[.]"
 
 In re Thrift
 
 ,
 
 137 N.C. App. 559
 
 , 562,
 
 528 S.E.2d 394
 
 , 396 (2000) (citation and quotation marks omitted). N.C. Gen. Stat. § 7B-801(b1) permits a trial court to enter a "consent adjudication order"
 
 only if
 
 (1) all parties are present or represented by counsel, who is present and authorized to consent; (2) the juvenile is represented by counsel; and (3) the court makes sufficient findings of fact. N.C. Gen. Stat. § 7B-801(b1) (2017).
 

 Separate and apart from the statutory authorization for consent adjudication orders contained in N.C. Gen. Stat. § 7B-801(b1), a different statute- N.C. Gen. Stat. § 7B-807 -allows factual stipulations made by a party to be used in support of an adjudication. In such cases, a record of the stipulation "shall be made by either reducing the facts to a writing, signed by each party stipulating to them and submitted to the court; or by reading the facts into the record, followed by an oral statement of agreement from each party stipulating to them." N.C. Gen. Stat. § 7B-807(a) (2017).
 

 The initial question before us is whether the trial court's 13 September 2017 order was a valid consent adjudication order such that no additional evidence of neglect needed to be introduced at the adjudication hearing and no further substantive findings of fact by the trial court establishing neglect were necessary to support its adjudication as to Rory. We find our decision in
 
 In re L.G.I.
 
 ,
 
 227 N.C. App. 512
 
 ,
 
 742 S.E.2d 832
 
 (2013), to be particularly instructive. In
 
 L.G.I.
 
 , an adjudicatory hearing took place during which the trial court "read the facts into the record[,]" noting that the juvenile in that case had tested positive for morphine at birth and that the respondent-mother had used illegal substances during her pregnancy.
 
 Id.
 
 at 515,
 
 742 S.E.2d at 835
 
 (citation, quotation marks and brackets omitted). The respondent-mother then agreed under oath to those facts. On appeal, however, she argued that this stipulation was
 
 *74
 
 not sufficient to convert the trial court's adjudication order into a consent adjudication order. We agreed with this argument, concluding that "[a]t most, respondent-mother entered into a stipulation as to certain facts during the adjudication phase of the hearing."
 

 Id.
 

 In re K.P.
 
 , --- N.C. App. ----,
 
 790 S.E.2d 744
 
 (2016), involved a challenge by the respondent-mother to the trial court's order adjudicating her children to be neglected and dependent in which she contended that the order was not a valid consent adjudication order.
 

 Id.
 

 at ----,
 
 790 S.E.2d at 747
 
 . The parties had attended a Child Planning Conference prior to an adjudication hearing. At the hearing, the department of social services submitted a report to the trial court indicating that a "Consent Agreement could not be reached at the conference."
 

 Id.
 

 at ----,
 
 790 S.E.2d at 748
 
 (quotation marks omitted). The trial court then entered an order adjudicating the children to be neglected and dependent "supported solely by two written reports submitted by DSS at the hearing."
 

 Id.
 

 at ----,
 
 790 S.E.2d at 748
 
 .
 

 On appeal, DSS argued that the trial court's order was, in fact, a valid consent adjudication order. The order, however, contained no findings that the parties "consented to the children being adjudicated as neglected and dependent."
 

 Id.
 

 at ----,
 
 790 S.E.2d at 749
 
 . Nor was there any evidence in the record "that a consent agreement had been reached for adjudication or that a consent order had been drafted. ... Specifically, neither of the parties' attorneys nor the trial court ever stated that respondent was consenting to the adjudication of her children as neglected and dependent."
 

 Id.
 

 at ----,
 
 790 S.E.2d at 749
 
 . Consequently, we held that the trial court's order failed to meet the requirements of a valid consent adjudication order.
 

 Id.
 

 at ----,
 
 790 S.E.2d at 749
 
 .
 

 Based on the principles set out in
 
 L.G.I.
 
 and
 
 K.P.
 
 , we conclude that the trial court's Adjudication Order here was not a valid consent adjudication order under N.C. Gen. Stat. § 7B-801(b1). Instead, the Adjudication Order simply contained a stipulation by the parties as to certain facts. Therefore, having determined that the Adjudication Order
 
 *918
 
 failed to meet the requirements for a consent adjudication order, we must next consider whether it contained sufficient findings of fact based on competent evidence to support the trial court's determination that Rory was a neglected juvenile.
 

 II. Sufficiency of Findings of Fact in Adjudication Order
 

 We review a trial court's adjudication of neglect "to determine (1) whether the
 
 *75
 
 findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact."
 
 In re T.H.T.
 
 ,
 
 185 N.C. App. 337
 
 , 343,
 
 648 S.E.2d 519
 
 , 523 (2007) (citation, quotation marks, and brackets omitted),
 
 aff'd as modified
 
 ,
 
 362 N.C. 446
 
 ,
 
 665 S.E.2d 54
 
 (2008). "The findings need to be stated with sufficient specificity in order to allow meaningful appellate review."
 
 In re S.C.R.
 
 ,
 
 217 N.C. App. 166
 
 , 168,
 
 718 S.E.2d 709
 
 , 712 (2011) (citation omitted).
 

 N.C. Gen. Stat. § 7B-101 defines a "neglected juvenile" as follows:
 

 A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or the custody of whom has been unlawfully transferred under G.S. 14-321.2 ; or who has been placed for care or adoption in violation of law.
 

 N.C. Gen. Stat. § 7B-101(15) (2017).
 

 In order for a child to be properly adjudicated as neglected, "this Court has consistently required that there be some physical, mental or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline. "
 
 In re Safriet
 
 ,
 
 112 N.C. App. 747
 
 , 752,
 
 436 S.E.2d 898
 
 , 901-02 (1993) (citation and quotation marks omitted). "Whether a child is neglected is a conclusion of law which must be supported by adequate findings of fact."
 
 In re McLean
 
 ,
 
 135 N.C. App. 387
 
 , 390,
 
 521 S.E.2d 121
 
 , 123 (1999) (citation and quotation marks omitted).
 

 In the present case, the findings of fact contained in the trial court's Adjudication Order consisted entirely of the following:
 

 1. That the petition alleging the child to be a neglected and dependent juvenile was filed on May 4, 2017 and an order was entered placing the juvenile in the physical and legal custody of [DSS]. The petition was properly signed by the social worker and verified by the Deputy Clerk of Superior Court.
 

 2. A pre-hearing was conducted on [12 July] 2017 when the Court addressed jurisdictional issues as required by 7B-800.1. The order was entered and filed on July 21, 2017. The findings in said order are incorporated herein by reference as if set out in full.
 

 *76
 
 3. The mother, under oath and with the advice of counsel, acknowledged and admitted that the juvenile is a neglected juvenile as defined by N.C. Gen. Stat. § 7B-101(15) in that she did not receive proper care and supervision by her mother as her mother did not insure that the child attended school regularly, having missed twenty-five days during the 2016-17 calendar year and having been tardy thirty-seven times. The child did not pass the core classes of English, Science, and Social Studies. A copy of the child's report card was introduced into evidence in support of said admission. In addition, the child was not taken to well care visits with a physician to address her medical needs.
 

 4. The child's father does not oppose the admission entered by [Respondent].
 

 5. That [DSS], in open court, took a voluntary dismissal of the allegation of dependency without prejudice.
 

 Thus, the specific findings purporting to support the court's conclusion of neglect are contained solely in Finding No. 3. First, the trial court stated that Respondent had admitted Rory was a "neglected juvenile." However, the determination of whether a juvenile is neglected within the meaning of
 
 *919
 
 N.C. Gen. Stat. § 7B-101(15) is a conclusion of law.
 
 See
 

 In re Everette
 
 ,
 
 133 N.C. App. 84
 
 , 86,
 
 514 S.E.2d 523
 
 , 525 (1999) ("Determination that a child is not receiving proper care, supervision, or discipline, requires the exercise of judgment by the trial court, and is more properly a conclusion of law."). It is well established that "stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate."
 
 In re A.K.D.
 
 ,
 
 227 N.C. App. 58
 
 , 60,
 
 745 S.E.2d 7
 
 , 9 (2013) (citation, quotation marks, and brackets omitted). Consequently, any "admission" by Respondent that Rory was a neglected juvenile was ineffective to support the trial court's adjudication of neglect.
 

 Second, the trial court stated in Finding No. 3 that (1) Respondent had failed to ensure Rory attended school regularly; (2) Rory had not passed three core classes; and (3) Rory was not taken to "well care visits" with a physician in connection with her "medical needs."
 

 In
 
 In re McMillan
 
 ,
 
 30 N.C. App. 235
 
 ,
 
 226 S.E.2d 693
 
 (1976), this Court upheld an adjudication of neglect where a father refused to allow his children to attend school at all.
 
 Id.
 
 at 236,
 
 226 S.E.2d at 694
 
 . In
 
 McMillan
 
 , the father was Native American and testified that he would
 
 *77
 
 not send his children to school because he believed they would not be taught about "Indians and Indian heritage and culture."
 

 Id.
 

 In addition, this Court determined that the children were not provided with "any sufficient alternative education or training" at home.
 
 Id.
 
 at 238,
 
 226 S.E.2d at 695
 
 . In affirming the trial court's neglect determination, we concluded that "[i]t is fundamental that a child who receives proper care and supervision in modern times is provided a basic education[,]" and that "when [a child] is deliberately refused this education," she is neglected within the meaning of the Juvenile Code.
 

 Id.
 

 The facts of the present case are easily distinguishable from
 
 McMillan
 
 . Here, no evidence was presented that Rory was "deliberately refused" an education by Respondent. Furthermore, the trial court made no findings as to the reasons for Rory's missed classes and tardiness or as to how many of Rory's absences were excused. Moreover, the trial court did not expressly find that Rory's failure to pass three classes directly resulted from her absences or from Respondent's failure to provide proper care, supervision, or discipline. Therefore, the stipulated facts regarding Rory's missed classes and the accompanying findings by the trial court fall far short of the scenario presented in
 
 McMillan
 
 and are insufficient to support the conclusion that Rory was a neglected juvenile.
 

 Finally, although N.C. Gen. Stat. § 7B-101(15) includes in its definition of a neglected juvenile one who does not receive "necessary medical care," the trial court's bare finding that Rory was not taken to "well care visits"-without more-is insufficient to support a finding of neglect. There are no findings as to the actual number of missed visits, the reasons they were missed, the medical conditions that necessitated the visits, or the nature or existence of any accompanying adverse effects on Rory's health. Accordingly, we hold that the trial court's findings on this issue are likewise inadequate to support its adjudication of neglect.
 

 DSS makes the following two arguments as to why the trial court's Adjudication Order should nevertheless be upheld: (1) any error by the trial court was "invited" by Respondent; and (2) a finding contained in the Order on Pre-Hearing was sufficient to support the adjudication of neglect. We address each of these arguments in turn.
 

 DSS initially contends that Respondent is prohibited from challenging the trial court's adjudication because she "invited the outcome reached by the trial court" by stipulating to the allegation of neglect. The doctrine of invited error applies to "a legal error that is not a cause for complaint because the error occurred through the fault of the party
 
 *78
 
 now complaining."
 
 Sain v. Adams Auto Grp., Inc.
 
 ,
 
 244 N.C. App. 657
 
 , 669,
 
 781 S.E.2d 655
 
 , 663 (2016) (citation and quotation marks omitted);
 
 see also
 

 Frugard v. Pritchard
 
 ,
 
 338 N.C. 508
 
 , 512,
 
 450 S.E.2d 744
 
 , 746 (1994) ("A party may not complain of action which he induced." (citation omitted) ).
 

 In arguing that Respondent invited the trial court to adjudicate Rory as a neglected
 
 *920
 
 juvenile, DSS relies on
 
 In re K.C.
 
 ,
 
 199 N.C. App. 557
 
 ,
 
 681 S.E.2d 559
 
 (2009). In that case, the respondent-mother argued on appeal that the trial court erred by "failing to adopt an appropriate visitation plan in its disposition order."
 

 Id.
 

 at 561
 
 ,
 
 681 S.E.2d at 563
 
 . However, the court found that the respondent-mother had "disclaimed any interest in seeing the children until DSS 'fixed' them" and that she had "flatly refused to work with DSS towards reunification even though DSS has offered such things as visitation."
 

 Id.
 

 at 563-64
 
 ,
 
 681 S.E.2d at 564
 
 (quotation marks and brackets omitted). As a result, this Court held that the respondent-mother was not entitled to appellate relief because she "specifically invited the trial court to honor her wishes by not providing for visitation between herself and the children[.]"
 

 Id.
 

 at 564
 
 ,
 
 681 S.E.2d at 564
 
 .
 

 K.C.
 
 is clearly distinguishable from the present case. Here, the record is devoid of any indication that Respondent requested the trial court to adjudicate Rory as a neglected juvenile or remove her daughter from her care. Rather, she merely stipulated to certain facts concerning Rory's school attendance, grades, and missed medical visits. Therefore, the doctrine of invited error is inapplicable.
 

 Next, DSS argues that a finding contained in the trial court's Order on Pre-Hearing supported a finding of neglect as to Rory based on allegations of sexual abuse. In making this argument, DSS directs our attention to the last sentence of Finding No. 2 of the Adjudication Order, which provides that "[t]he findings in [the Order on Pre-Hearing] are incorporated herein by reference as if set out in full." DSS then points to Finding of Fact No. 9 of the Order on Pre-Hearing, which stated as follows:
 

 9. There is no reasonable means other than continued custody with [DSS] to protect the juvenile and ensure her safety and the custody order should continue in effect. Efforts to prevent removal of the child from her parents' custody and care were precluded by an immediate threat of harm to the juvenile, and placement of the juvenile in the absence of such efforts was reasonable. [DSS], during an investigation based
 
 *79
 
 upon allegations received on June 23, 2017, found that [Respondent's] boyfriend, who has been identified as a sexual perpetrator against [Rory], was living in the home. [Respondent] did not find this to be a concern.
 

 The Adjudication Order did not contain any specific references at all to Rory being sexually abused or indicate any concerns on this subject. Nor was any evidence offered on this issue at the adjudication hearing. Nevertheless, DSS contends that the trial court's wholesale incorporation by reference of the findings from the Order on Pre-Hearing properly served as the basis for the adjudication of neglect based on the proposition that Rory was sexually abused by a person living in Respondent's home. We disagree.
 

 The trial court's Order on Pre-Hearing was issued pursuant to N.C. Gen. Stat. § 7B-800.1, which provides, in pertinent part, as follows:
 

 (a) Prior to the adjudicatory hearing, the court shall consider the following:
 

 (1) Retention or release of provisional counsel.
 

 (2) Identification of the parties to the proceeding.
 

 (3) Whether paternity has been established or efforts made to establish paternity, including the identity and location of any missing parent.
 

 (4) Whether relatives, parents, or other persons with legal custody of a sibling of the juvenile have been identified and notified as potential resources for placement or support.
 

 (5) Whether all summons, service of process, and notice requirements have been met.
 

 (5a) Whether the petition has been properly verified and invokes jurisdiction.
 

 (6) Any pretrial motions, including (i) appointment of a guardian ad litem in accordance with G.S. 7B-602, (ii) discovery motions in accordance with G.S. 7B-700, (iii) amendment of the petition in accordance with
 
 *921
 
 G.S. 7B-800, or (iv) any motion for a continuance of the adjudicatory hearing in accordance with G.S. 7B-803.
 
 *80
 
 (7) Any other issue that can be properly addressed as a preliminary matter.
 

 N.C. Gen. Stat. § 7B-800.1 (2017).
 

 As an initial matter, we observe that the trial court did not indicate in Finding No. 2-or in any other finding-of the Adjudication Order that it believed any specific provisions of the Order on Pre-Hearing were relevant to its determination of neglect. Instead, as noted above, the
 
 only
 
 substantive findings in the Adjudication Order related to missed classes and medical visits. Given that the Adjudication Order describes the Order on Pre-Hearing as having addressed "jurisdictional issues[,]" there is no indication that the court intended for any of the provisions of the Order on Pre-Hearing to constitute a substantive basis for the adjudication of neglect.
 

 Moreover, it is important to note that the portion of Finding of Fact No. 9 in the Order on Pre-Hearing upon which DSS relies is not actually a "finding" at all. Instead, the court simply stated that
 
 DSS
 
 made the finding referenced therein. This Court has held that "[i]n juvenile proceedings, it is permissible for trial courts to consider all written reports and materials submitted in connection with those proceedings. Nevertheless, despite this authority, the trial court may not delegate its fact finding duty by relying wholly on DSS reports and prior court orders."
 
 In re Z.J.T.B.
 
 ,
 
 183 N.C. App. 380
 
 , 386-87,
 
 645 S.E.2d 206
 
 , 211 (2007) (internal citations, quotation marks, and brackets omitted);
 
 see also
 

 In re Harton
 
 ,
 
 156 N.C. App. 655
 
 , 660,
 
 577 S.E.2d 334
 
 , 337 (2003) (stating that trial court may not simply recite allegations but must instead find facts that support its conclusions of law). Therefore, for all of these reasons, Finding of Fact No. 9 in the Order on Pre-Hearing did not serve as a valid basis for the trial court's adjudication of Rory as a neglected juvenile.
 

 Conclusion
 

 For the reasons stated above, we vacate the trial court's 13 September 2017 adjudication and disposition
 
 [4]
 
 orders and remand for further proceedings not inconsistent with this opinion.
 

 VACATED AND REMANDED.
 

 Judges DILLON and BERGER concur.
 

 [1]
 

 Pseudonyms and initials are used throughout this opinion for ease of reading and to protect the juvenile's privacy.
 

 [2]
 

 DSS took a voluntary dismissal as to the allegation of dependency that was contained in the petition.
 

 [3]
 

 Rory's father is not a party to this appeal.
 

 [4]
 

 Because we are vacating the trial court's adjudication order, we must likewise vacate its disposition order.