IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-66

No. COA20-311

Filed 16 March 2021

Rutherford County, Nos. 18 JA 101-02

IN THE MATTER OF: R.P., X.P.

Appeal by respondents from order entered 14 February 2020 by Judge Robert Martelle in Rutherford County District Court. Heard in the Court of Appeals 24 February 2021.

*King Law Offices PLLC, by Brian W. King and Thomas Morris, for petitioner-appellee Rutherford County Department of Social Services.*

*Miller and Audino LLP, by Jeffrey L. Miller, for respondent-appellant mother.*

*Surratt Thompson & Ceberio PLLC, by Christopher M. Watford, for respondent-appellant father.*

*Fox Rothschild LLP, by Kip D. Nelson, for Guardian ad Litem.*

TYSON, Judge.

¶ 1     Respondents mother and father appeal the adjudication and initial disposition order adjudicating their minor child, X.P. ("Xavier") as abused and neglected. *See* N.C. R. App. P. 42(b) (pseudonyms are used to protect the identity of the juveniles). Respondent-father also appeals the trial court's adjudication of R.P. ("Rorie") as abused and neglected. We vacate the orders and remand for a new adjudication and

disposition hearing.

## I. Background

¶ 2     Respondent-mother gave birth to Xavier, while in the bathtub at her parents' home in July 2018. Xavier and Respondent-mother tested positive for amphetamines and benzodiazepine after Xavier's birth. Respondent-mother had failed to obtain prenatal care prior to the birth. The Rutherford County Department of Social Services ("DSS") became involved with the family two days after Xavier's birth.

¶ 3     DSS scheduled a child and family team ("CFT") meeting and drug testing for Respondents, their twelve-year-old child, Rorie, and Xavier for 28 August 2018. Both Respondent-mother and Xavier tested positive for methamphetamine. Respondent-mother and Xavier attended the CFT meeting and agreed to a safety plan. Respondent-father failed to attend or to bring Rorie to be drug tested.

¶ 4     The safety plan included the family moving into the juveniles' paternal grandfather's home. On 13 September 2018, when DSS arrived at the grandfather's home for the next scheduled CFT meeting, the family had moved back into their own home. Rorie told DSS she had observed both of her parents use methamphetamine in the home and she did not feel safe being around them. Rorie was tested the next day and was negative for drugs.

¶ 5     DSS filed its original juvenile petitions on 13 September 2018, alleging Rorie was neglected and Xavier was abused and neglected. DSS filed amended petitions

with the same allegations on 16 October 2018. The juveniles were placed into DSS'

custody. After initially being in foster care, Rorie was placed in the home of her

paternal grandfather and Xavier resided in a kinship placement.

¶ 6        Respondents acquiesced to an out-of-home services agreement on 21

September 2018. Both parents agreed to complete mental health and drug

assessments and comply with any recommended treatment. Respondents denied

drug usage and did not complete any drug assessments.

¶ 7        Respondent-mother tested positive for methamphetamine on 25 September

2018 and again on 25 October 2018. Respondent-father provided his first drug screen

on 25 October 2018, which was positive for methamphetamine and amphetamines.

On 4 January 2019, Respondent-mother tested positive for oxycodone,

methamphetamine, and amphetamines. Respondent-father tested positive for

methamphetamine and amphetamines on that same date.

¶ 8        The adjudication hearing was held 22 January 2019. All parties and their

attorneys were present before Judge C. Randy Pool. The parties stipulated to

thirteen statements of fact. The stipulations were introduced as Exhibit A and DSS

offered no other evidence at adjudication. The stipulations included the results of the

drug tests administered through the pendency of the case, that Xavier was abused

and neglected, and that Rorie was neglected.

¶ 9   Judge Pool indicated "based on the stipulations [he] would make findings of fact consistent with those in the stipulation on Exhibit A, would -- based on that stipulation -- enter the adjudications of neglect [of both juveniles] and abuse [of Xavier]."

¶ 10   At the disposition stage of the hearing, the court received DSS' court reports and those of the guardian *ad litem* ("GAL"). The recommended permanent plan was reunification. Judge Pool listed several conditions to be included in the order and asked for DSS' attorney to draft the order. The matter was to be set for review in three months.

¶ 11   The adjudication and disposition orders were not signed until 14 February 2020. Judge Pool had resigned prior to that date, and the order was signed by the chief district court judge, Judge Robert Martelle. Respondents timely appealed. Respondent-mother noted her appeal only to the order regarding Xavier.

## II.   Jurisdiction

¶ 12   Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7B-1001(a)(5) (2019).

## III.   Standards of Review

¶ 13   This Court reviews a trial court's adjudication of a child as a neglected or abused juvenile to determine "(1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the

findings of fact." *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (citations omitted). "The trial court's conclusions of law are reviewable *de novo* on appeal." *In re K.J.D.*, 203 N.C. App. 653, 657, 692 S.E.2d 437, 441 (2010) (citation and quotation marks omitted).

"The standard of review of the dispositional stage is whether the trial court abused its discretion." *In re D.R.B.*, 182 N.C. App. 733, 735, 643 S.E.2d 77, 79 (2007). An abuse of discretion occurs when the trial court acts under a misapprehension of the law or its ruling is "so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

## IV. Issues

Respondents assert the adjudication and disposition orders signed by Judge Martelle are void, and argue in the alternative, that their stipulations are insufficient, standing alone, to support an adjudication of abuse or neglect. Respondents further assert the trial court erred in relying solely upon written reports and attorney arguments at the disposition stage.

## V. Analysis

### A. Ministerial Action

We take judicial notice that Judge Pool resigned from the bench and left the orders unsigned. *See* N.C. Gen. Stat. § 8C-1, Rule 201 (2019) (court may take judicial notice of fact not subject to reasonable dispute). North Carolina Rule of Civil

Procedure 63 allows the chief district court judge to sign orders upon the resignation of a district court judge.

> If by reason of death, sickness or other disability, *resignation*, retirement, expiration of term, removal from office, or other reason, a judge before whom an action has been tried or a hearing has been held is unable to perform the duties to be performed by the court under these rules after a verdict is returned or a trial or hearing is otherwise concluded, then those duties, including entry of judgment, may be performed:
>
> . . .
>
> (2) In actions in the district court, by the chief judge of the district, or if the chief judge is disabled, by any judge of the district court designated by the Director of the Administrative Office of the Courts.
>
> If the substituted judge is satisfied that he or she cannot perform those duties because the judge did not preside at the trial or hearing or for any other reason, the judge may, in the judge's discretion, grant a new trial or hearing.

N.C. Gen. Stat. § 1A-1, Rule 63 (2019) (emphasis supplied).

¶ 17    Respondents argue Rule 63 does not anticipate the chief district court judge's signing an adjudication order after the judge who presided at the hearing and heard the evidence resigned without entry of the orders. Respondents rely upon this Court's holding that the function of a substituted judge is "ministerial rather than judicial." *In re Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984).

¶ 18    In *Whisnant*, Judge Tate had conducted a hearing on a motion to terminate the respondent's parental rights on 20 October 1983. *Id.* at 440, 322 S.E.2d at 435.

Judge Tate stated insufficient evidence supported neglect, but evidence existed to find nonpayment of support and "he believed the best interest of the child would be served by termination of parental rights." *Id.* Judge Tate directed the GAL attorney to prepare the order. *Id.* The resulting adjudication and disposition orders listed Judge Crotty had heard the matter and they were signed by Judge Crotty on 28 December 1983. *Id.* This Court held "Judge Crotty was without authority to sign the order terminating respondent's parental rights and the order he signed [was] a nullity." *Id.* at 441, 322 S.E.2d at 435.

¶ 19        Respondents, relying upon *Whisnant*, assert the judge presiding at the hearing is the only one who hears all the evidence, passes upon the credibility of the witnesses, and discerns the weight to be applied to the testimony and the inferences to be drawn therefrom to adjudicate the issues. Respondents also argue Judge Pool, not Judge Martelle, is the one who received their stipulation in open court on the day of the hearing.

¶ 20        DSS and the GAL argue Judge Pool presided over the hearing and articulated both his findings of fact and the basis of his decision, stating he "would make findings of fact consistent with those in the stipulation on Exhibit A." Judge Pool indicated he "would - based on that stipulation - enter the adjudication of neglect and abuse . . . as is admitted to." DSS and the GAL assert that because of the stipulation all that was left for Judge Martelle was to sign the order as a ministerial act.

¶ 21   Our Juvenile Code allows for stipulations by the parties to be received into evidence at adjudication. N.C. Gen. Stat. § 7B-807(a) (2019). The statute provides "[a] record of specific stipulated adjudicatory facts shall be made by either reducing the facts to a writing, signed by each party stipulating to them and submitted to the court; or by reading the facts into the record, followed by an oral statement of agreement from each party stipulating to them." *Id.* The statute requires the trial court shall make and state the same findings "that the allegations in the petition have been proven by clear and convincing evidence" as is required where live testimony is presented. *Id.*

¶ 22   Here, the parties stipulated to the facts underlying the adjudication. This stipulation was written and signed by all parties. It is unquestioned that the parties were lawfully able to stipulate to the adjudicatory facts in this matter. Such stipulations of underlying facts could properly have been included as part of the final judgment.

¶ 23   However, nothing in the record or transcript shows Judge Pool ever made or rendered the final findings of fact and conclusions of law in the unfiled and unsigned orders. He merely stated he would enter the adjudication "as is admitted to." Since the record on appeal shows only a stipulation without any adjudication of the facts and conclusions of law, or rendering of the order, any action by Judge Martelle to

cause the later prepared and unsigned draft order to be entered was not solely a ministerial duty. *In re Whisnant*, 71 N.C. App. at 441, 322 S.E.2d at 435.

¶ 24      Further, the statutorily required disposition hearing requires the presiding judge consider competent evidence "necessary to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen. § 7B-901 (2019). Judge Martelle's signing of the disposition orders cannot be considered simply a ministerial act.

¶ 25      At the 22 January 2019 hearing, Judge Pool stated he "would make findings consistent with the stipulations consistent with the reports presented by the guardian ad litem and by the department of social services." The court stated, "reasonable efforts [had] been made by the agency" and that it would be "in the best interest of the children to remain in DSS custody." The court ordered Respondents to comply with their out-of-home services agreements. These four findings are included in the written orders.

¶ 26      All other purported findings and conclusions included in the order signed by Judge Martelle are not reflected in any stipulations or oral statements of Judge Pool. The written disposition portion of the order went beyond the oral recitations of Judge Pool.

¶ 27      Rendering and entering judgment was more than a ministerial task. Judge Martelle was without authority to sign the adjudication and disposition orders and the orders are a "nullity." *In re Whisnant*, 71 N.C. App. at 441, 322 S.E.2d at 435.

DSS asserts voiding Judge Martelle's order would be an improper extension of our Supreme Court of North Carolina's recent holding in *In re C.M.C.*, 373 N.C. 24, 28, 832 S.E.2d 681, 684 (2019). DSS argues the reasoning in *C.M.C.* is only applicable to termination of parental rights hearings and orders and not to the initial adjudication of the juveniles. DSS' argument is unpersuasive and erroneous.

In *C.M.C.*, our Supreme Court held a termination of parental rights order signed by a different judge than the judge who presided over the termination hearing was a nullity. *Id.* The Court specifically adopted the reasoning of this Court's decisions in *In re Whisnant*, 71 N.C. App. at 442, 322 S.E.2d at 435 and *In re Savage*, 163 N.C. App. 195, 198, 592 S.E.2d 610, 611 (2004). The Supreme Court concluded the appropriateness of nullifying the orders stems "from the fact that N.C.G.S. § 1A-1, Rule 52 requires a judge presiding over a non-jury trial to (1) make findings of fact, (2) state conclusions of law arising on the facts found, and (3) enter judgment accordingly." *In re C.M.C.*, 373 N.C. at 28, 832 S.E.2d at 684 (internal citation and quotation marks omitted). The Court further recognized the appropriateness of their result by noting N.C. Gen. Stat. § 1A-1, Rule 58 provides that "a judgment is entered when it is reduced to writing, signed by *the* judge, and filed with the clerk of court." *Id.* (citation omitted).

Contrary to DSS' assertion, our Supreme Court relied upon our rules of civil procedure, not upon some perceived distinction between the gravity of a hearing on a

juvenile petition versus a hearing on a motion to terminate parental rights. *See id.* Here, Judge Pool did not recite, render, nor sign the order. His unsigned order is not a valid judgment from where Judge Pool presided over the adjudication hearing, and Judge Martelle's ministerial signature thereon cannot cure the judgment. *See In re C.M.C.*, 373 N.C. at 28, 832 S.E.2d at 684.

## B. Stipulated Conclusions of Law

¶ 31 Our conclusion to vacate is also supported by other precedent. "It is well established that stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate." *In re R.L.G.*, 260 N.C. App. 70, 76, 816 S.E.2d 914, 919 (2018) (citation and internal quotation marks omitted).

¶ 32 In the present case, the parties' stipulation includes "the Respondent parents stipulate and admit that [Xavier] is an abused and neglected juvenile" and that Rorie is "a neglected juvenile." Chapter 7B and our case law clearly require the trial court's legal conclusion that a child is abused or neglected be based upon DSS' presentment and admission of clear and convincing evidence. N.C. Gen. Stat. § 7B-805 (2019).

¶ 33 Here, the parties did not agree to the trial court entering a "consent adjudication order" pursuant to N.C. Gen. Stat. § 7B-801(b1) (2019) (allowing consent order to be entered where all parties consent, the juveniles are represented by counsel and the court makes sufficient findings of fact).

¶ 34    DSS concedes Respondents' stipulation that they believed their children to be neglected and abused is not binding on a court as a legal conclusion. *See In re R.L.G.*, 260 N.C. App. at 76, 816 S.E.2d at 919.

¶ 35    The juvenile petition filed alleges Xavier was abused in that Respondents "inflicted or allowed to be inflicted on the juvenile a serious physical injury by other than accidental means." *See* N.C. Gen. Stat. § 7B-101(1) (2019). The petition alleges Xavier was neglected in that the Respondents did "not provide proper care, supervision, or discipline" and "lives in an environment injurious to the juvenile's welfare." *See* N.C. Gen. Stat. § 7B-101(15) (2019). DSS' petition alleged the same statutory prongs of neglect concerning Rorie.

¶ 36    According to the trial court's finding of fact in *In re R.L.G.*, the respondent had admitted the juvenile was neglected because she did not ensure that the juvenile attended school regularly. *In re R.L.G.*, 260 N.C. App. at 76, 816 S.E.2d at 918. This Court recognized "the determination of whether a juvenile is neglected within the meaning of N.C. Gen. Stat. § 7B-101(15) is a conclusion of law." *Id.* at 76, 816 S.E.2d at 918-19. Such "[d]etermination that a child is not receiving proper care, supervision, or discipline, requires the exercise of judgment by the trial court." *Id.* This Court held the respondent's admission that the juvenile was a neglected juvenile "was ineffective to support the trial court's adjudication of neglect." *Id.*

¶ 37        The formulation of this conclusion requires the hearing judge to consider the properly admitted evidence, determine the weight and burden on DSS, and reconcile the nexus, if any, between the stipulated facts, and to adjudicate whether the child is neglected or abused. "The trial court's findings must consist of more than a recitation of the allegations contained in the juvenile petition. The trial court must, through processes of logical reasoning, based on the evidentiary facts before it, find the ultimate facts essential to support the conclusions of law." *In re K.P.*, 249 N.C. App. 620, 624, 790 S.E.2d 744, 747 (2016) (alterations and internal quotation marks omitted) (citation omitted).

¶ 38        Judge Pool would have been unable to simply rest alone upon a stipulated conclusion. It is equally clear Judge Martelle cannot, in the name of a ministerial act, do what Judge Pool himself could not do. *See id.* Judge Martelle was not present at the hearing and on the basis of the order alone could not adjudicate Rorie and Xavier as neglected and abused as a conclusion of law, in a ministerial act.

¶ 39        DSS asserts there exists a distinction between accepting a stipulation as a legal conclusion at an initial adjudication and disposition hearing versus accepting one at a termination of parental rights hearing. DSS argues the trial court's action requires us to apply a lower standard, since it does not involve termination of parental rights or a substantial deprivation of Respondents' ability to see their children. DSS asserts another judge signing off on an order after conduct of this hearing on

allegations of abuse and neglect and determining the appropriate initial disposition is a ministerial task.

¶ 40 This assertion is not supported by the statute or our case law. The case of *In re R.L.G.*, an appeal of the initial adjudication hearing, was held upon DSS' petition alleging the juvenile was neglected. The disposition order in that case ordered DSS to pursue the goal of reunification. *In re R.L.G.*, 260 N.C. App. at 73, 816 S.E.2d at 916.

¶ 41 In the case of *In re L.G.I.*, 227 N.C. App. 512, 515, 742 S.E.2d 832, 835 (2013), the respondent had entered into a stipulation of certain facts during the adjudication phase of the hearing. On appeal, this Court reviewed whether the adjudication order was a valid consent adjudication order, and no additional evidence showing neglect needed to be presented beyond the parties' agreed upon facts. The respondent asserted, and this Court agreed, that her stipulation did not convert the trial court's order into a consent adjudication order. *Id.* at 515, 742 S.E.2d at 835.

¶ 42 This Court affirmed the trial court's adjudication because additional medical record evidence in the record supported the respondent-mother's prenatal drug exposure, even without respondent-mother's stipulation. *Id.* at 516, 742 S.E.2d at 835.

¶ 43 No other evidence beyond the parties' stipulation was presented at the adjudication hearing. Judge Pool was required to make findings of fact, adjudicated

and state conclusions of law arising on those facts, and enter judgment accordingly. The parties did not and could not have stipulated to the final conclusion in this matter.

¶ 44    Respondent-father also points out the written order also concludes Rorie "is adjudicated to be an abused and neglected juvenile." "The allegations in a petition alleging that a juvenile is abused, neglected, or dependent shall be proved by clear and convincing evidence." N.C. Gen. Stat. § 7B-805. The underlying petition only alleged neglect. The box alleging "abuse" on the petition was not checked. The parties stipulated Rorie is neglected "[a]s a result of the frequent use of illegal controlled substances." No evidence was offered at the adjudication hearing and no findings of fact in the order support a conclusion that Rorie was abused.

¶ 45    We categorically reject DSS' argument that Judge Martelle's rendering of Rorie as abused in the absence of such allegation in the petition was within his discretion or is, at worst, nonprejudicial or harmless error. Presuming Judge Pool had signed the order, this conclusion is erroneous. No clear and convincing evidence supports a conclusion Rorie was abused and that portion of the adjudication is vacated. *Id.*; *In re Gleisner*, 141 N.C. App. at 480, 539 S.E.2d at 365; *see also In re D.C.*, 183 N.C. App. 344, 349, 644 S.E.2d 640, 643 (2007) (holding where DSS did not click the box or allege neglect in its petition, the trial court erred by entering an order adjudicating the juvenile to be a neglected juvenile"). That conclusion is vacated.

## C. Disposition

Respondents also argue the trial court abused its discretion in rendering its disposition without sufficient credible and competent evidence to support its findings. DSS and the GAL respond that the initial disposition hearings are informal and there is no requirement that the order be supported by live testimony, just competent evidence. Both DSS and the GAL presented court reports to Judge Pool at the disposition stage. Because we hold the adjudication orders signed by Judge Martelle are "a nullity." It is unnecessary to reach the merits of these arguments. *In re Whisnant*, 71 N.C. App. at 441, 322 S.E.2d at 435.

## VI.   Conclusion

Notwithstanding the parties entered into specific stipulation of facts that Rorie was neglected and that Xavier was abused and neglected, Judge Pool did not adjudicate the evidence, enter conclusions of law, and render an order. The chief district court judge could not properly sign the later written adjudication and disposition orders as merely a ministerial duty. The orders are vacated and the case is remanded for a new hearing. *It is so ordered.*

VACATED AND REMANDED.

Judges COLLINS and WOOD concur.