IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-71

Filed 2 July 2025

Moore County, Nos. 23JA000005-620, 23JA000006-620

In re: T.C. & L.B.C.

Appeal by Respondent-Mother from orders entered 23 March 2023 by Judge Beth Tanner and 27 August 2024 by Judge Warren M. McSweeney in Moore County District Court. Heard in the Court of Appeals 11 June 2025.

*Sharlene Gilmer Anderson for Petitioner-Appellee Moore County Department of Social Services.*

*Parker, Poe, Adams & Bernstein LLP, by R. Bruce Thompson II, for Guardian ad Litem.*

*Nathalie M. Doran for Respondent-Appellee Father.*

*Garron T. Michael, Esq., for Respondent-Appellant Mother.*

COLLINS, Judge.

Mother appeals from an order adjudicating her minor children abused and neglected and from a disposition order granting Father sole physical and legal custody of their minor children. Mother argues that the trial court erred in adjudicating the minor children abused and neglected by relying entirely on a stipulation to which Mother did not agree and to which Mother specifically objected,

and by refusing to conduct a hearing on the merits despite Mother's request. We vacate the orders and remand the matter to the trial court.

## I.    Background

Mother and Father are the biological parents of two minor children: Tyler, born in 2017, and Lauren, born in 2015.[1]   On 11 January 2023, the Moore County Department of Social Services ("DSS") filed juvenile petitions alleging that the two children were abused and neglected.  Based on the petitions, DSS obtained nonsecure custody of the children and placed them in a kinship placement with their maternal grandfather and step-grandmother, with whom Father was also living.

The petitions came on for a hearing on 2 March 2023; Mother, Mother's attorney, Father, Father's attorney, DSS, and the guardian ad litem ("GAL") were all present at the hearing.  The hearing, which encompassed both a pre-adjudication hearing and an adjudication hearing, lasted fifteen minutes, from 12:55 p.m. to 1:10 p.m.; the transcript of the hearing spans fifteen pages.  At the outset, DSS introduced a pre-adjudication order that was consented to by all parties, and the trial court found that there were no pre-trial motions pending.

The matter moved to adjudication, and DSS told the trial court it had a "signed stipulation" signed by Father, Father's attorney, DSS, and the GAL.  The stipulation stated, in part,

> The signatory respondent parents, with assistance of

---

[1] We use pseudonyms to protect the identity of the minor children.  *See* N.C. R. App. P. 42.

counsel, enter into this stipulation upon personal knowledge or upon information and belief, and while neither admitting nor denying the specific allegations of the petition, stipulate the following facts on the date of the filing of the petition upon which the Court could determine by clear, cogent and convincing evidence the status of the juveniles [Lauren] and [Tyler] as defined under N.C.G.S. § 7B-101.

(italics omitted). The stipulation listed twenty-three allegations, a vast majority of which concerned Mother's alleged conduct giving rise to the petitions. Despite the assertion that "respondent parents" had entered in the stipulation, DSS admitted that neither Mother nor Mother's attorney had signed the stipulation.

The following exchange then occurred regarding the trial court's acceptance of the stipulation that Mother had not agreed to as a basis for an adjudication:

> [DSS]: Your Honor, it is up to the [c]ourt as to whether that is sufficient evidence. 807 says, "A record of stipulated adjudicatory facts shall be made by either reducing the facts to writing, signed by each party stipulating to them; or by reading the facts into the record. If the [c]ourt finds that the allegations have not been proven," et cetera, et cetera.
>
> But, generally, the practice is if -- we can put evidence on Your Honor; however, if we are going to put evidence on, we would need to continue the matter.
>
> THE COURT: Well, I mean, I think -- I'm sorry. And somebody can correct me about this, if I'm wrong. But I think the trouble is these stipulations would be fine, except they haven't been stipulated to by all the parties.
>
> [DSS]: All the parties do not have to stipulate. There is case law on that.
>
> THE COURT: Okay.
>
> [DSS]: As long as one parent stipulates, they can be

- 3 -

accepted by the [c]ourt. And I should amend that. One parent who is familiar with the facts, right? If Dad wasn't a party to those facts, then that would be a problem. If he was incarcerated and hadn't been around, had no personal knowledge of them --

THE COURT: Okay.

[DSS]: -- that would be problematic.

THE COURT: Okay. So [DSS] is asking that I accept these adjudication stipulations based upon a case that says that adjudication stipulation only has to be adjudicated -- or stipulated to between [DSS] and at least one other party with knowledge.

[DSS]: It's also in the code.

THE COURT: Okay. And the party with knowledge is the father and he has stipulated to these, and you would like for me to accept those. Do you want to be heard as to that, [Mother's attorney]?

Mother's attorney objected to the use of the stipulation and requested that the trial court hold a hearing on the merits:

[Mother's attorney]: I would just like to note my objection to this. I think that, once you read these allegations and facts, it should be obvious to the [c]ourt as to why we have refused here to stipulate.

My client desperately wants her children back and would like the opportunity to be heard to -- as to when she can have her children back at the soonest possible time. I realize that that is not going to be today, given the way things are going. But this is very hard for her at this time.

. . . .

So, I mean, my client came today hoping that we could convince the [c]ourt to be heard on the entire merits of the case. I do believe that it would probably take the entire lunch break, the rest of the day, and probably part of the day tomorrow to do that. And that is if we have all the evidence available to us, the -- that we would each need.

- 4 -

DSS responded that the stipulation was sufficient to prove the facts for adjudication, but if the trial court did not believe so, it requested a continuance:

> [DSS]: And, Your Honor, I will say that we do not have that evidence in under -- and I would be -- if you're not inclined to accept the stipulation, under 803, I do believe we have good cause for a continuance as it is reasonably required to receive additional evidence, reports, or assessments needed.
>
> . . . So we are unable at this time to go forward on any hearing as to -- definitely as to disposition.
>
> However, if the [c]ourt is inclined to take the stipulation as to adjudication, I believe we have stipulated facts in there in order to prove that. But we would be happy to put on evidence in a hearing. It would just have to be at a later date.

Following this exchange, Father's attorney told the trial court, "we do accept these stipulations and hope that the [c]ourt will as well." Father's attorney also clarified that Father did not have personal knowledge of the content of the stipulations stating what DSS found during its investigations. The GAL then told the trial court that "as long as [Father] knows that those are factual allegations, he can stipulate to those, even if [Mother] does not."

The trial court said, "[g]ive me just a second" and read the stipulation, after which the trial court accepted the stipulation and determined that it was clear, cogent, and convincing evidence of abuse and neglect:

> THE COURT: Okay. After having heard the argument of counsel and reviewing the adjudication stipulations, I will accept these at this time, noting the objection of [Mother] and her attorney[.]

. . . .

THE COURT: Hold on. Before we get to the disposition, let me just make sure I've been clear. Having accepted the adjudication stipulation, I presume now you would like for me to find that it was determined by clear, cogent, and convincing evidence that the children are abused, neglected, and dependent?

Is that correct?

[DSS]: Yes. Thank you, Your Honor.

THE COURT: You'd like for me to find that now, and then you would like to continue the disposition?

[DSS]: That's correct, Your Honor.

THE COURT: Okay.

[GAL]: I don't think dependency was alleged for all the children. Perhaps not.

[DSS]: It was --

[GAL]: I just looked at one and didn't see that dependency part[.]

[DSS]: I think -- I think that's correct. Dependency has not been alleged.

[GAL]: Just wanted to --

THE COURT: I'm sorry. Can somebody -- is that on here? But formally with --

[DSS]: Look at the petitions.

THE COURT: You are correct. I apologize. That was the [c]ourt's mistake. [DSS] has not requested that they be found dependent, only that they be found abused and neglected. Based on that and because, of course, there would've been no notice of a finding -- or a request to find dependent, I will only find the juveniles abused and neglected.

After adjudicating Tyler and Lauren abused and neglected based solely on the stipulation, the trial court continued their non-secure custody with DSS, discussed

potential disposition hearing dates with the attorneys, and concluded the adjudication hearing. The trial court entered its written adjudication order on 23 March 2023. In its order, the trial court noted Mother's objection to the stipulation, but its findings of fact in support of the adjudication were based solely on that stipulation and were essentially verbatim recitations of the facts alleged in the stipulation. The matter moved to disposition.

Prior to the disposition hearing, Mother retained new counsel, who filed a motion to "[m]odify the placement and/or visitation of [Tyler] to allow maximum contact with [Mother] . . . ." Mother asserted that the modification would be in Tyler's best interest, and she stated that there had "not been an evidentiary hearing on this issue and [Tyler] was removed from [her] custody [on] January 11, 2023 . . . ." The trial court held a hearing on Mother's motion on 8 June 2023 and found that Mother "has been cooperating with []DSS" and "has complied with the case plan as currently constituted," but that DSS was "waiting on further recommendations from the children's medical records review" and for the results from Mother's "parental capacity and psychological evaluation." The trial court determined that it was contrary to both Tyler's and Lauren's best interest to return custody to Mother, but it determined that supervised visitation with Mother was in their best interest. The trial court granted Mother two hours of supervised visitation each week and two fifteen-minute phone calls each week. The issue of visitation was again heard on 10 August 2023, and the trial court granted Mother four hours of supervised visitation

each week.

The disposition hearing began on 26 October 2023. At the beginning of the hearing, Mother's attorney raised concerns about the adjudication hearing and the trial court's reliance on the stipulations that Mother did not sign or agree to, and she moved to dismiss the matter "for lack of subject matter jurisdiction . . . based on the improper adjudication or the fact that the adjudication was not done in keeping with the statute and specifically the statute § 7B-807, which sets out adjudication." The trial court denied Mother's motion to dismiss and began hearing evidence. The disposition hearing took place on four different court dates, spanning a period of six months, and concluded on 4 April 2024.

In its written dispositional order, entered on 27 August 2024, the trial court found that Tyler and Lauren had been adjudicated abused and neglected juveniles and that DSS's efforts were reasonable to achieve the primary plan of family reunification. The trial court granted Father "sole physical and legal custody of the juveniles," reduced Mother's visitation to four hours of supervised visitation every other weekend, and granted Mother "reasonable telephonic access to the minor child[ren]" but gave Father "the discretion to terminate a phone call if he feels the communication is not in the best interests of the minor children." The trial court then converted the matter into a Chapter 50 custody order and terminated its jurisdiction, stating that "any further proceedings . . . shall occur in the Chapter 50 civil custody proceeding established herein."

Mother timely filed notice of appeal from the adjudication and disposition orders on 24 September 2024.

## II. Discussion

Mother argues that the trial court erred by adjudicating Tyler and Lauren abused and neglected "where it relied entirely on a stipulation that Mother did not agree to, specifically objected to, and refused to conduct a hearing on the merits despite a clear request by Mother's counsel[.]"

## A. Preservation

DSS argues that Mother's issue on appeal regarding the stipulation is not properly before this Court because, "while [Mother] did 'object' to the stipulations, the exact objection and grounds for the objection are not clear in the transcript or the order." DSS further claims that, "[a]t no point in time does [Mother] clearly or specifically object to the facts contained in the stipulation, the use of the stipulation . . . , or competency of the stipulated facts for the adjudication of abuse and neglect." DSS thus argues that Mother "did not preserve the precise issue for appellate review." DSS's arguments are entirely unsupported and border on frivolous.

The transcript of the adjudicatory hearing and the adjudication order clearly show that the precise issue on appeal was properly preserved. The following exchange took place at the adjudicatory hearing:

> THE COURT: Well, I mean, I think -- I'm sorry. And somebody can correct me about this, if I'm wrong. But I think the trouble is these stipulations would be fine, except

they haven't been stipulated to by all the parties.

[DSS]: All the parties do not have to stipulate. There is case law on that.

THE COURT: Okay.

[DSS]: As long as one parent stipulates, they can be accepted by the [c]ourt. And I should amend that. One parent who is familiar with the facts, right? If Dad wasn't a party to those facts, then that would be a problem. If he was incarcerated and hadn't been around, had no personal knowledge of them --

THE COURT: Okay.

[DSS]: -- that would be problematic.

THE COURT: Okay. So [DSS] is asking that I accept these adjudication stipulations based upon a case that says that adjudication stipulation only has to be adjudicated -- or stipulated to between [DSS] and at least one other party with knowledge.

[DSS]: It's also in the code.

THE COURT: Okay. And the party with knowledge is the father and he has stipulated to these, and you would like for me to accept those. Do you want to be heard as to that, [Mother's attorney]?

[Mother's attorney]: I would just like to note my objection to this. I think that, once you read these allegations and facts, it should be obvious to the [c]ourt as to why we have refused here to stipulate.

. . . .

So, I mean, my client came today hoping that we could convince the [c]ourt to be heard on the entire merits of the case. I do believe that it would probably take the entire lunch break, the rest of the day, and probably part of the day tomorrow to do that. And that is if we have all the evidence available to us, the -- that we would each need.

The content and context of this exchange show that Mother and her attorney clearly

and specifically objected to the use of the stipulation at the adjudicatory hearing and that Mother wanted to put on evidence and be heard on the "entire merits" of the case.

Moreover, the trial court found as fact in the adjudication order that Mother's "attorney . . . made an objection to the stipulation as his client did not sign or enter into the stipulation" and that the "objection was overruled, and the Court accepted the stipulation." The issue regarding the stipulation is properly preserved for our review, and DSS's assertion to the contrary is unavailing and not appreciated.

## B. Standard of Review

A juvenile abuse and neglect proceeding involves two separate phases: an adjudicatory phase and a dispositional phase. *See* N.C. Gen. Stat. §§ 7B-807, 7B-901 (2023). We review a trial court's adjudication to determine whether the trial court's findings of fact are supported "by clear and convincing evidence." N.C. Gen. Stat. § 7B-805 (2023); *In re J.A.M.*, 372 N.C. 1, 8 (2019) (citations omitted). In turn, "the trial court's findings" must properly "support the trial court's conclusion[s] of law." *Id.* at 9. The determination that a child is abused or neglected is a conclusion of law, which this Court reviews de novo. *In re G.C.*, 384 N.C. 62, 66 (2023) (citations omitted). Under de novo review, we consider the matter anew and "freely substitute" our own judgment for that of the trial court. *Id.* (citation omitted). If the petitioner meets its burden during the adjudicatory phase, the trial court proceeds to the dispositional phase, where it must consider the child's best interest. *In re A.J.L.H.*,

386 N.C. 305, 310 (2024). We review the trial court's determination as to the best interest of the child "solely for abuse of discretion." *Id.* (citations omitted).

**C. Stipulations**

N.C. Gen. Stat. § 7B-807 "allows factual stipulations made by a party to be used in support of an adjudication." *In re R.L.G.*, 260 N.C. App. 70, 73 (2018) (citation omitted). N.C. Gen. Stat. § 7B-807(a) provides, "If the court finds from the evidence, including stipulations by a party, that the allegations in the petition have been proven by clear and convincing evidence, the court shall so state." N.C. Gen. Stat. § 7B-807(a). The statute further provides, "A record of specific stipulated adjudicatory facts shall be made by either reducing the facts to a writing, signed by each party stipulating to them and submitted to the court; or by reading the facts into the record, followed by an oral statement of agreement from each party stipulating to them." *Id.*

"Despite the contemplation of 'stipulations by a party' in the statute, our caselaw has made clear that stipulations do not extend beyond what was agreed to by those stipulating." *In re E.P.-L.M.*, 272 N.C. App. 585, 605 (2020) (Murphy, J. concurring) (citing *Rickert v. Rickert*, 282 N.C. 373, 380 (1972)). "Stipulations do not extend beyond what was agreed to, and do not extend to parties who did not agree to them either." *Id.*; *see Lumber Co. v. Lumber Co.*, 137 N.C. 431, 438-39 (1905) ("Parties undoubtedly have the right to make agreements and admissions in the course of judicial proceedings . . . [but] the court will not extend the operation of the agreement beyond the limits set by the parties or by the law."); *Rickert*, 282 N.C. at 380 (stating

that stipulations "will not be so construed as to give the effect of an admission of a fact obviously intended to be controverted, or the waiver of a right not plainly intended to be relinquished") (citations omitted).

"A stipulation is a judicial admission. As such, [i]t is binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent from the necessity of producing evidence to establish the admitted fact." *Moore v. Humphrey*, 247 N.C. 423, 430 (1958) (quotation marks and citation omitted). Accordingly, a stipulation by one respondent parent may not bind another respondent parent who was not a party to the stipulation and objects to its use. *See In re E.P.-L.M.*, 272 N.C. App. at 605.

Here, the only evidence offered at the adjudication hearing to prove the allegations in the juvenile petitions was the stipulation. The stipulation's sole purpose was to prove Mother's alleged conduct which constituted the abuse and neglect of the juveniles. Mother did not agree to the stipulation. Neither Mother nor Mother's attorney signed the stipulation. Mother's attorney clearly and specifically objected to the trial court accepting the stipulation as evidence of the juveniles' adjudication. DSS specifically informed the trial court that the juveniles could be adjudicated abused and neglected based on a stipulation not signed by all the parties. While the stipulation could have supported allegations of Father's conduct, the stipulation could not and did not extend to Mother, who did not agree to it. *See id.*; *Lumber*, 137 N.C. at 438-39; *Rickert*, 282 N.C. at 380.

The findings of fact in support of the juveniles' adjudication track the "stipulated" facts concerning Mother's conduct in the stipulation. As the stipulation was not competent to establish those facts, and the trial court received no other evidence at the adjudication hearing, the trial court's findings of fact are not supported "by clear and convincing evidence." N.C. Gen. Stat. § 7B-805. As a result, the trial court's conclusions of law that the juveniles are abused and neglected are not supported. *In re G.C.*, 384 N.C. at 66. The trial court thus erred by adjudicating the children abused and neglected.

The GAL, DSS, and Father all cite *In re E.P.-L.M.* for the proposition that North Carolina law allows for the use of a stipulation signed by only one parent who has personal knowledge of the facts. This misrepresents the procedural history and facts of that case. While the stipulation here could have supported allegations of Father's conduct, the holding in *In re E.P.-L.M.* does not support any of the arguments made by the GAL, DSS, or Father at trial or on appeal, and the prescient concurring opinion explains why these parties' arguments are wrong.

In *In re E.P.-L.M.*, DSS filed a juvenile petition alleging the minor child was abused, neglected, and dependent. 272 N.C. App. at 588. The trial court held a hearing on DSS's petition with all parties present and represented by counsel. "DSS, the GAL, and Father tendered stipulations to the trial court concerning [m]other's alleged conduct giving rise to the petition; [m]other, however, did not sign the stipulations." *Id.* "DSS and the GAL both argued that the stipulations could be used

to establish [m]other's conduct even absent her agreement to them." *Id.* "As discussion continued, DSS argued to the court that the stipulations could—without more—be used to meet its burden." *Id.* at 589. Mother did not "object to the stipulations or argue that they could not be used to establish her conduct[.]" *Id.*

"The trial court ultimately accepted the stipulations as 'between three out of the four parties as to the facts in the stipulations.'" *Id.* (brackets omitted). The trial court adjudicated the child abused, neglected, and dependent in open court, stating: "All right, on the adjudication then, this order is based on the stipulated facts between DSS, the GAL, and Father, the evidence presented by DSS, and the evidence presented by [m]other, and the arguments of all four counsel." *Id.* at 590 (brackets omitted). The trial court entered a written order adjudicating the child abused, neglected, and dependent, "based upon the stipulated facts, the evidence presented, testimony of [m]other, and arguments of counsel." *Id.* at 591 (brackets omitted).

The mother argued on appeal that the stipulations were not admissible in evidence. *Id.* This Court concluded that mother had failed to preserve her argument for appellate review by failing to object to the admission of the stipulations into evidence. *Id.* at 592. Mother also argued that the trial court's adjudication order was not supported by sufficient evidence. *Id.* This Court "h[e]ld that the trial court's unchallenged findings of fact were sufficient to support the trial court's adjudication [order]." *Id.* at 594.

The concurring opinion agreed that mother had failed to preserve her

- 15 -

argument about the stipulation for review but wrote separately to reject the GAL's and DSS's arguments that, had the issue been preserved, the trial court's use of the "stipulation" against mother was appropriate. *Id.* at 605. It stated, "The GAL suggests that a party who did not agree to a stipulation may be bound by the content of the stipulation. This is not the law, this has never been the law, and this should never be the law in an adversarial system." *Id.* It further explained:

> Stipulations are not evidence of anything against a party beyond what is stipulated to by that party. As our Supreme Court stated [in *Rickert*], even if a stipulation could fully establish a claim on its own, it still would not entitle a party to relief on that claim when the stipulation was not intended to extend to the claim. This further demonstrates that a stipulation is not evidence to the extent there is not agreement to its terms. . . . If a stipulation is not evidence beyond the extent of the parties agreed-upon terms, it cannot be evidence against a party who does not agree to it. If this were not true, it would make the requirement "that the parties or those representing them assent to the stipulation" pointless, as in any action with three or more parties, two parties could enter a stipulation only about the other party, as happened here, that would be included in evidence against all other parties despite the other parties not agreeing to the stipulation. . . . Using the "stipulation" here as evidence against Mother despite her not being a party to it was improper, and the trial court erred in considering the "stipulation" as evidence against her.

*Id.* at 607-08 (citations omitted).

While a concurring opinion may not be binding, it is surely instructive, and we adopt its reasoning. For the reasons explained in the concurring opinion and stated here in this present opinion, "[u]sing the 'stipulation' here as evidence against Mother

despite her not being a party to it was improper, and the trial court erred in considering the 'stipulation' as evidence against her." *Id.* at 608.

### III.    Conclusion

Because the trial court's findings of fact are not supported by clear and convincing evidence, the findings of fact fail to support the trial court's conclusion of law that Tyler and Lauren were abused and neglected. We vacate the adjudication and disposition orders, and we remand the matter to the trial court for an adjudicatory hearing in which the parties shall have the opportunity to provide evidence regarding the allegations of abuse and neglect contained in the petitions.

VACATED AND REMANDED.

Judges TYSON and ZACHARY concur.